**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PREET KAUR,

*Petitioner,*

v.

ALBERTO R. GONZALES,* Attorney
General,

*Respondent.*

No. 03-73285

Agency No.
A73-419-669

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 11, 2005**
San Francisco, California

Filed August 11, 2005

Before: J. Clifford Wallace, Johnnie B. Rawlinson, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

---

*Alberto R. Gonzales is substituted for his predecessor, John Ashcroft,
as Attorney General of the United States, pursuant to Fed. R. App. P.
43(c)(2).

**This panel unanimously finds this case suitable for decision without
oral argument. See Fed. R. App. P. 34(a)(2).

**COUNSEL**

Richard E. Oriahki, Roman & Singh, LLP, San Francisco, California, for petitioner-appellant Preet Kaur.

Ronald E. Lefevre, Department of Homeland Security, San Francisco, California, Michelle E. Gorden, Department of Justice, Washington, D.C., Thomas H. Tousley, Office of Immigration Litigation, Washington, D.C., for respondent-appellee Alberto R. Gonzales.

**OPINION**

BYBEE, Circuit Judge:

Preet Kaur ("Kaur") petitions for review of a decision of the Board of Immigration Appeals ("BIA"), affirming the Immigration Judge's ("IJ") decision denying her requests for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The IJ denied Kaur's application because he found her not credible. Kaur asserts that the IJ's adverse credibility determination was based upon impermissible grounds and was not supported by substantial evidence. Specifically, she argues that the IJ relied on inconsistencies that may have weakened her claim for asylum, but that had no bearing on her credibility.

The question presented here is significant: Must an IJ ignore repeated and blatant inconsistencies throughout an

alien's hearing testimony and applications, simply because, when viewed individually, each inconsistency actually served to weaken her eligibility for relief? We conclude that nothing in our case law mandates such a technical approach to credibility determinations. Accordingly, we hold that, in light of the facts of this case, the IJ's adverse credibility determination was supported by substantial evidence. We deny the petition.

## I. FACTS AND PROCEEDINGS BELOW

Petitioner Kaur, a native and citizen of India, entered the United States in March of 1993. Subsequently, in January 1995, Kaur applied for asylum, withholding of removal, and relief under the CAT. In her initial application, Kaur provided certain biographical information about herself, specifically representing that she was not married. She claimed that she was persecuted because her brother and father were members of the All India Sikh Student Federation ("Federation") and had been active in local political affairs. Kaur described in her application how, in December of 1991, more than 65 Punjabi police officers raided her home and arrested her brother and father. She also stated that she had personally campaigned for the boycott of the February 1992 state assembly election in the Punjab region of India. She recalled that she was arrested, in May of 1992, taken to a police station, and raped twice by a local police officer. She represented that she subsequently fled India by traveling first to Nepal, then to Singapore, Canada, and finally, the United States.

After submitting her application, an INS officer interviewed Kaur on February 15, 1995. During this interview, Kaur testified to the officer consistent with her original application. She also swore that the contents of her asylum application and the attached declaration were true.

At a hearing on the merits of her asylum application, Kaur submitted a revised application accompanied by another written declaration. In her second application, Kaur's recitation of

her biographical information as well as the events leading up to her departure from India changed dramatically. Kaur now stated that she was not in fact single, but married with a child. Rather than actively campaigning for the February 1992 election boycott, Kaur now maintained that her political activities were limited to voting in the November 1989 elections. In addition, Kaur stated that instead of the 65-70 police officers she originally claimed raided her home in December of 1990, there were actually only 8-12 officers, and the year was 1991. Kaur went on to declare that it was her brother and grandfather, not her father, who were active in Indian politics and who had been arrested and beaten by the Punjabi police.

Importantly, in her second application, Kaur stated that, in fact, she was *not* raped during the May 1992 arrest, but only interrogated, threatened, and released to her family the next day. One of the few consistencies between the two written statements that Kaur offered was that she had fled India by way of Nepal, Singapore, and Canada before entering the United States. But even this minor point of agreement vanished during her oral testimony.

At a hearing before an IJ on the merits of her asylum application further inconsistencies emerged. Kaur testified first that her grandfather was a member of the Federation, but later represented only that it was "possible" that he was a member. She also changed the route by which she arrived in the United States. In contrast to her first and second asylum applications, Kaur testified at the hearing that she traveled first to Germany, then to Canada, and finally to the United States. Significantly, Kaur admitted to the IJ that she knowingly lied to the INS officer, in particular stating that she was single, for the express purpose of ensuring that her husband could file an asylum application if hers was denied.

Reviewing the numerous contradictions between her oral testimony and her asylum applications, the IJ ruled that Kaur was not credible. Accordingly, the IJ denied her applications

for asylum, withholding of removal, and relief under the CAT. The BIA affirmed the IJ's decision without opinion and this timely petition for review followed.

## II. STANDARD OF REVIEW

When the BIA affirms an IJ's decision without opinion, we review the IJ's decision as the final agency determination. *See Desta v. Ashcroft*, 365 F.3d 741, 745 (9th Cir. 2004). This court reviews an IJ's credibility determination for substantial evidence. *See Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir. 2004). We accord special deference to an IJ's credibility determination, and will only exercise our power to grant a petition for review when the evidence "compel[s] a contrary conclusion." *See Malhi v. INS*, 336 F.3d 989, 993 (9th Cir. 2003). However, an IJ must provide specific and cogent reasons to support an adverse credibility determination. *See He v. Ashcroft*, 328 F.3d 593, 595 (9th Cir. 2003).

## III. ANALYSIS

In this case, the issue is not whether the IJ provided specific and cogent reasons to support his credibility determination, but rather whether the proffered reasons were based on impermissible grounds. We conclude that they were not.

[1] It is well settled in our circuit that minor inconsistencies that do not go to the heart of an applicant's claim for asylum cannot support an adverse credibility determination. *Akinmade v. INS*, 196 F.3d 951, 954 (9th Cir. 1999) (*citing Martinez-Sanchez v. INS*, 794 F.2d 1396, 1400 (9th Cir. 1986)). Additionally, in *Damaize-Job v. INS*, we first announced that "minor discrepancies in dates that are attributable to the applicant's language problems or typographical errors and cannot be viewed as attempts by the applicant to enhance his claims of persecution have no bearing on credibility." 787 F.2d 1332, 1337 (9th Cir. 1986). *See also Wang v. Ashcroft*, 341 F.3d 1015, 1022 (9th Cir. 2003) (observing

that "minor discrepancies" on points incidental to the asylum applicant's claim of persecution — namely dates, normal work hours, and related details — could not support an adverse credibility determination); *cf. Vilorio-Lopez v. INS*, 852 F.2d 1137, 1142 (9th Cir. 1988) ("[D]iscrepancies in dates which reveal nothing about an asylum applicant's fear for [her] safety are not an adequate basis for an adverse credibility finding.").[1]

**[2]** Later cases have expanded the principle beyond dates, language problems and typographical errors, elevating its status to that of a general rule. *See, e.g., Stoyanov v. INS*, 172 F.3d 731, 736 (9th Cir. 1999) (stating that where the inconsistency in the applicant's testimony lessens the degree of persecution she experienced, such inconsistency "*generally* does not support an adverse credibility determination") (emphasis added). The concern underlying each of our decisions in this arena has been to avoid premising an adverse credibility finding on an applicant's failure to remember non-material, trivial details that were only incidentally related to her claim of persecution. *See, e.g., Osorio v. INS*, 99 F.3d 928, 931 (9th Cir. 1996) ("[T]rivial errors by an asylum applicant do not constitute a valid ground upon which to base a finding that an asylum applicant is not credible.") (quotations omitted); *Vilorio-Lopez*, 852 F.2d at 1142 (observing that "[m]inor inconsistencies" that "reveal nothing about an asylum applicant's fear for his safety are not an adequate basis for an adverse credibility finding"). This concern is heightened where the alien receives the assistance of a translator to aid in the preparation of her asylum application. *See, e.g., Alvarez-Santos v. INS*, 332 F.3d 1245, 1254 (9th Cir. 2003) ("Inconsistencies due to an unscrupulous preparer, *without other evidence of dishonesty*

---

[1]With the passage of the Real ID Act, our review of an IJ's adverse credibility finding is significantly restricted. *See* 8 U.S.C. § 1158(b)(1) (B)(iii). However, the relevant provisions of that Act are not applicable to this case because Kaur applied for relief before May 11, 2005. *See* Pub. L. 109-13, Div. B, Title I, § 101(h)(2), 119 Stat. 231 (May 11, 2005).

. . . do not provide a specific and cogent basis for an adverse credibility finding.") (internal citation omitted) (emphasis added).

The petitioner in this case would have us ignore the mass of serious, repeated and blatant inconsistencies in her testimony, and instead focus on the singular fact that one of the most damaging of her contradictions — the revelation that she was not in fact raped by the police — only served to weaken her claim. In other words, Kaur argues that because she eventually settled upon a story far less dramatic than its precursors, we must ignore her inconsistencies altogether. It strains credulity to hold that the evidence presented at the asylum hearing compels us to find Kaur believable for the sole reason that she admitted to being a liar.

**[3]** We do not read our cases to mandate such a narrow approach. Our court has never articulated a *per se* rule that whenever inconsistencies technically weaken an asylum claim they can never serve as the basis of an adverse credibility finding. Rather, in each case where we have employed the rule first announced in *Damaize-Job*, we have emphasized the "minor" or "trivial" nature of the alleged discrepancies. *See generally Wang*, 341 F.3d at 1021-22 (conflict involving the exact date of applicant's abortion, the applicant's normal work hours, whether her husband met her at the hospital after her first abortion, and how the couple celebrated the pregnancy; holding that "minor discrepancies" which "do not go to the heart of [the applicant's] asylum claim . . . cannot constitute substantial evidence"); *Shah v. INS*, 220 F.3d 1062, 1068 (9th Cir. 2000) (conflict between the date of death reflected on a death certificate and the date testified to by the asylum applicant; holding that the "discrepancy . . . is not a proper basis for an adverse credibility finding in this case" as "[i]t is well-established that, 'minor discrepancies in dates that are attributable to . . . typographical errors' cannot properly serve as the basis for an adverse credibility finding") (citing *Damaize-Job*, 787 F.2d at 1337)).

Most notably, in the very case in which the rule was first proclaimed, *Damaize-Job*, the IJ's adverse credibility finding was premised in part on "minor discrepancies." 787 F.2d at 1337. In that case, the petitioner stated in his oral testimony that his daughter was born in 1968, while his asylum application indicated that she was born in 1967. *Id*. The IJ found that this inconsistency called the petitioner's credibility into doubt. We found fault with the IJ's reasoning, observing that "[t]he IJ nowhere explained how these inaccuracies reflected on the credibility of his persecution claims or for what possible reason [petitioner] would intentionally have provided incorrect information on such trivial points." *Id*. We explicitly characterized the errors as "trivial," and concluded that they provided an insufficient "excuse upon which to predicate a finding of no credibility." *Id*. Significantly, it was the triviality of the errors that precluded them from supporting the adverse credibility determination, not the fact that, technically speaking, the errors weakened the petitioner's claim.

Likewise, in *Garrovillas v. INS*, we emphasized that "inconsistences of less than substantial importance for which a plausible explanation is offered" cannot support an adverse credibility finding. 156 F.3d 1010, 1014 (9th Cir. 1998). In that case, the alien's asylum application stated that he had been fired upon, but he testified six years later that he had never been fired upon. He offered a plausible explanation for the inconsistency: "his former attorney prepared his . . . asylum application and [ ] he had signed it without reading it." *Id*. at 1013. We observed that "*[i]n itself*, the inconsistency [did] not prove much" as it was "quite possible that the attorney who filed the application stretched the facts without informing [the alien]." *Id*. at 1014 (emphasis added). Under the circumstances, we concluded that the alien's revised story did not provide substantial evidence to support an adverse credibility finding:

> [T]here was no reason for Garrovillas to disavow the earlier statement other than a desire to correct an

> error of which he had not been aware. His revised story served to lessen the degree of persecution he experienced, rather than to increase it. In addition, there is nothing in the record to suggest that Garrovillas had any reason to fear that a false assertion would be exposed at the hearing. Thus, as far as we can tell from the record, the most likely explanation for the change is a desire to tell the truth and to correct a false statement that reflected no culpable conduct on his part.

*Id.* However, we were careful to emphasize that "[i]f the inconsistency were accompanied by *other indications of dishonesty*, we might deem the BIA's finding justified." *Id.* (emphasis added)

**[4]** In short, our case law does not mandate that we, or the IJ for that matter, abandon our common sense in favor of rules of general application. It is well established in this circuit that false statements and other inconsistencies must be viewed in light of all the evidence presented in the case. *See Kaur v. Ashcroft*, 379 F.3d 876, 889 (9th Cir. 2004) ("[M]isrepresentations must instead be evaluated in light of all the circumstances of the case . . . ."); *Turcios v. INS*, 821 F.2d 1396, 1400 (9th Cir. 1987) (observing that "it is the examiner's responsibility to evaluate [untrue] statements in the light of all the circumstances of the case"). Hence, it is incumbent upon the IJ to view each portion of an alien's testimony, not solely as independent pieces of evidence with no bearing on the testimony as a whole, but in light of all of the evidence presented. Importantly, in *Garrovillas*, we explicitly qualified the general rule regarding inconsistencies that weaken an asylum claim by stating that when "the inconsistency [is] accompanied *by other indications of dishonesty*," such testimony might in fact support an adverse credibility finding. 156 F.3d at 1014 (emphasis added). *Cf. Alvarez-Santos*, 332 F.3d at 1254 ("Inconsistencies due to an unscrupulous preparer*, without other evidence of dishonesty* . . . do not provide a specific

and cogent basis for an adverse credibility finding.") (internal citation omitted) (emphasis added).

**[5]** "[O]ther indications of dishonesty" abound in this case. *Garrovillas*, 156 F.3d at 1014. Indeed, the inconsistencies are so numerous and so blatant as to cast doubt on Kaur's entire story. For example, Kaur declared in her first asylum application that she had campaigned personally for the boycott of the February 1992 state assembly election in the Punjab region of India. She later stated that her political activities were limited to voting in the November 1989 elections. Moreover, her first asylum application represented that she was not married, but her second application indicated that she was married and indeed had one child. Kaur admitted in her testimony that she lied about her marital status in order to ensure the possibility that her husband could file an asylum application in the event hers was denied. Unlike the "plausible explanation" offered by the petitioner in *Garrovillas*, Kaur's explanation cannot be said to "reflect[ ] no culpable conduct on [her] part." 156 F.3d at 1014.

**[6]** Kaur also stated in her second asylum application that only 8 to 12 members of the Punjabi police entered her home; her first application listed the number between 65 and 70. The date of the raid on her home also changed from one application to the next. These discrepancies are significant because they concern one of the few interactions between Kaur and the Punjabi police.

**[7]** Even during the asylum hearing, Kaur seemed unsure of her story, first stating that her grandfather was a member of the Federation, and then stating only that it was "possible" that he was a member. More significantly, however, in her second application Kaur retracted her original statement that she had been raped by the Punjabi police. This material inconsistency goes to the heart of Kaur's claim of persecution — her mistreatment at the hands of the Punjabi police — regardless of whether it strengthens or weakens her claim. Impor-

tantly, this discrepancy cannot rationally be characterized as "minor;" it falls plainly outside the scope of the general rule announced in *Damaize-Job*.

It is of no consequence, in this case, that Kaur's first application, containing many of the admitted falsities, was prepared by a third party. While we have previously observed that an "inconsistency does not prove much" if it is possible that the petitioner merely signed the application without demonstrating any awareness of its contents, the principle has little application to these facts. *Garrovillas*, 156 F.3d at 1014. Here, Kaur was personally interviewed by an asylum officer and questioned as to the contents of her first application. She was given an opportunity to clarify her testimony; had she desired to tell the truth and correct a false statement she could have easily done so at that time. Indeed, Kaur admitted, at her asylum hearing, that there were material misrepresentations in her first application and that she was aware of those misrepresentation at the time she was interviewed by the INS officer. When presented with the opportunity, the petitioner here expressed no "desire to correct an error of which [she] had not been aware." *Garrovillas*, 156 F.3d at 1014. Not only did Kaur fail to correct her misrepresentations, she repeated the version of events outlined in her first asylum application and swore to their verity.

**[8]** We do not read our cases to mandate that the IJ ignore Kaur's repeated and blatant inconsistencies. Rather, we hold that when inconsistencies that weaken a claim for asylum are accompanied by other indications of dishonesty — such as a pattern of clear and pervasive inconsistency or contradiction — an adverse credibility determination may be supported by substantial evidence. In the end, when reviewing an adverse credibility determination we must decide whether the IJ correctly labeled the applicant not credible. As we stated succinctly in *Sarvia-Quintanilla v. INS*, "[the IJ] is, by virtue of his acquired skill, uniquely qualified to decide whether an alien's testimony has about it the ring of truth." 767 F.2d

1387, 1395 (9th Cir. 1985). Credibility determinations, by their very nature, are always fact-driven, making them inherently ill-suited to the application of technical *per se* rules. In light of the particular facts presented here, we conclude that the repeated and significant inconsistencies in Kaur's testimony deprive her claim of the requisite "ring of truth." As aptly stated by the IJ, "[t]he truth in this case has . . . been a moving target."

## IV. CONCLUSION

**[9]** We are unable to conclude that the evidence in this case compels a finding that the petitioner was credible, or that the IJ's credibility determination was based upon impermissible grounds. Rather, we hold that substantial evidence supports the IJ's adverse credibility determination. Accordingly, Kaur's petition for review is denied.

**PETITION DENIED.**