

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-2008

# Huang v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-1979

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Huang v. Atty Gen USA" (2008). *2008 Decisions.* Paper 1273.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1273

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-1979
_____

YU QUING HUANG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

Petition for Review of an Order of the
United States Department of Justice
Board of Immigration Appeals
(BIA No. A77 977 244)
Immigration Judge: Henry S. Dogin
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 1, 2008

Before: RENDELL, GREENBERG, and VAN ANTWERPEN, Circuit Judges

(Filed: May 5, 2008)
_____

OPINION OF THE COURT
_____

PER CURIAM

Yu Qing Huang, a native and citizen of China, petitions for review of an order of

the Board of Immigration Appeals (BIA or Board), which dismissed his appeal of an

Immigration Judge's final removal order. We will deny the petition.

Huang arrived in the United States in 2001 without a valid entry document. He was served with a Notice to Appear charging him with the same, which he admitted. He applied for asylum and related relief. Huang's applications for relief were based on his allegation that his "wife" was forced to have an abortion and that he feared he would be sterilized and forced to pay a fine if he returned to China. Huang testified before an Immigration Judge (IJ) that he married Mei Jiao Chen in a traditional ceremony, but that both were underage, so they could not register their marriage. They lived together and had a child, born in April 1999. They never registered their marriage, even after they were of age. Huang learned in July or August of 2000 that his wife was pregnant again. On or about January 13, 2001, a number of people broke into his brother's house where they were living, took his wife, who was seven months pregnant, and dragged her off for an abortion. Huang was forcibly restrained and could not stop them. He was notified about a week later that he owed a fine of 20,000 RMB, which he never paid.

The IJ noted that Huang told airport officials that he had been detained and held for a month, and also that his property was destroyed. In the hearing before the IJ, Huang acknowledged that he made those statements, but said that the smugglers told him to say them, and that they were not true. The IJ found that Huang was not entirely credible, given in part the discrepancies between his testimony and his answers to airport officials. The IJ acknowledged that this court had cautioned against relying on airport statements, but reasoned that it was permissible to consider the airport statements in this case,

2

because Huang was questioned in Mandarin, which he understood, and he acknowledged that he made the statements in question. The IJ found that Huang had not been personally persecuted.

The IJ also questioned whether Huang had a "wife." The IJ noted that he might be willing to extend In re C-Y-Z-, 21 I&N Dec. 915 (BIA 1997) (en banc)[1] if there was evidence that a traditional ceremony actually took place as Huang testified, but noted that none of the evidence mentioned a ceremony. The IJ noted that Huang did not name a spouse in his asylum application (although he mentioned his wife in the narrative); that exhibits from his wife and his older brother did not mention anything about a ceremony, but instead mentioned only that Huang and his wife cohabitated. The IJ opined that ceremony was important in the Chinese culture, and that the lack of any mention of a ceremony was therefore especially telling. The IJ also found that the fact they had not registered their marriage was a negative factor. The IJ denied relief.

On appeal, the Board of Immigration Appeals (BIA), citing pages of the IJ's opinion, held that Huang "failed to credibly meet his burden of showing past persecution and a reasonable possibility of suffering persecution on account of a protected ground

---

[1] In C-Y-Z-, the Board held that an applicant who has established that his spouse has undergone a forced sterilization procedure has established past persecution. Id. at 918. This in turn establishes a regulatory presumption that the applicant has a well-founded fear of future persecution, which only may be rebutted "by a showing, by a preponderance of the evidence, that since the time the persecution occurred, conditions in the applicant's country have changed to such an extent that the applicant no longer has a well-founded fear of persecution if returned to his home country." Id. at 919; 8 C.F.R. § 208.13(b)(1).

3

upon returning to China." The BIA, again citing pages from the IJ's decision and from the hearing transcript and exhibits, stated that Huang's experiences in China "did not rise to the level of persecution." The Board cited Matter of S-L-L-, 24 I & N Dec. 1 (BIA 2006), which holds that an unmarried applicant may claim persecution related to a partner's coerced abortion only if he was persecuted for other resistance to a coercive population policy, and then noted that although Huang had previously stated that he had been arrested and detained and that property had been destroyed, Huang discounted those statements in his testimony before the IJ.[2] The BIA also found that Huang had failed to meet the burden of showing eligibility for withholding of removal and protection under the United Nations Convention Against Torture.

Huang filed a petition for review in the Second Circuit, which was transferred to this Court. We have jurisdiction pursuant to 8 U.S.C. § 1252(a). Because the BIA not only adopted the IJ's decision but also expanded upon it, our review encompasses both decisions. Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). The Board's factual

---

[2] Huang also argued to the BIA for the first time that he would be persecuted on account of his parents' opposition to family planning policy. The BIA held that Huang had not established that China had a pattern or practice of persecuting children of those opposed to family planning policies. The BIA also noted that Huang had submitted additional evidence, including a fine receipt, his daughter's birth certificate and entry in a household registration booklet, a letter from his "wife" and her household registration booklet, a letter from his father, and two receipts from Western Union (the opinion does not indicate what these receipts were for). The BIA noted that it could not consider new evidence on appeal and held that the evidence did not warrant a remand. Huang has not raised issues related to these holdings in his petition.

4

determinations are upheld if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole. Immigration & Naturalization Serv. v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Whether an applicant for asylum has demonstrated past persecution or a well-founded fear of persecution is a factual question which is reviewed under the substantial evidence standard. See Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). We also review an adverse credibility determination under the substantial evidence standard. Xie v. Ashcroft, 359 F.3d 239, 242 (3d Cir. 2004). Under this deferential standard of review, we must uphold the credibility determination unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Huang argues that the BIA did not expressly make an adverse credibility holding. We disagree. The BIA's decision states that Huang "failed to *credibly* meet his burden of showing past persecution and a reasonable possibility of suffering persecution on account of a protected ground upon returning to China." (Emphasis added). The opinion then references two segments of the IJ's decision, one in which the IJ determined that Huang lied to officials in his airport interview and credible fear interview; and another in which the IJ found that Huang was not credible concerning his claim that he had a traditional marriage ceremony with his "wife."

The adverse credibility determination concerning Huang's marital status is

5

supported by substantial evidence.[3]  See Chen, 376 F. 3d at 222.  In his airport statement,

Huang stated that he was single.  His asylum application does not list his spouse's name.

Although Huang testified before the IJ that he had a traditional marriage ceremony, none

of the evidence he submitted supported that contention. Although in Balasubramanrim v.

INS, 143 F.3d 157, 162 (3d Cir. 1998) this Court warned that airport statements may not

be reliable because of the conditions under which they are conducted, here, as the IJ

recognized, the airport interview was conducted in Mandarin, and Huang acknowledged

that he made the statements that were recorded.  See  Chen, 376 F.3d at 224-25 (airport

interview may be considered where alien does not challenge manner in which interview

was conducted and he has not claimed that his statements were mischaracterized).

The discrepancy about Huang's marital status is substantial and goes to "the heart

of" his claim.  Gao, 299 F.3d at 272.  A "person who has been forced to abort a

pregnancy or to undergo involuntary sterilization" is deemed, by statute, to have been

subjected to persecution. Immigration and Nationality Act § 101(a)(42).  The BIA has

extended this protection to the spouses of persons forced to submit to coercive family

planning policies, see Matter of C-Y-Z-, 21 I&N Dec. at 918-19, but it has declined to

offer similar protection to unmarried partners, see Matter of S-L-L-, 24 I & N Dec. at 9-

10.  This Court has upheld the Board's decision not to extend relief beyond spouses.  See

---

[3] The provisions of the Real ID Act that address the Court's review of an adverse
credibility finding do not apply because Huang applied for relief before the Act's
effective date.  See Kaur v. Gonzales, 418 F.3d 1061, 1064 n.1 (9th Cir. 2005).

Chen v. Ashcroft, 381 F.3d 221, 235 (3d Cir. 2004). Because there is substantial evidence that Huang is not married, either officially or traditionally, Chen controls here.

Huang has also argued that he suffered harm amounting to persecution in his own right, as he "resisted" China's family planning laws. Huang testified that his hands were held behind his back and he was "crushed" to the ground when his girlfriend was taken away. He testified that officials were seeking him to pay a fine. The BIA's conclusion that these incidents do not rise to the level of persecution is supported by substantial evidence. Fatin v. v. INS, 12 F.3d 1233, 1243 (3d Cir. 1993) (holding that persecution denotes "extreme conduct"). Huang also argues that he suffered emotional harm amounting to persecution, and that the fine was so excessive as to constitute persecution, but as he failed to raise these arguments before the Board, we are precluded from considering them. See Xie, 359 F.3d at 246 n.8 (statutory exhaustion requirements are jurisdictional).

Because Huang failed to meet his burden of showing eligibility for asylum, he necessarily failed to meet the higher burden of eligibility for statutory withholding of removal. We also agree with the Board that Huang did not demonstrate any likelihood that he would be tortured upon his return to China.

For the foregoing reasons, we will deny the petition for review.