**Tunde Maria KACSO, Petitioner,**

v.

**Michael MUKASEY, Respondent.**

No. 06–71312.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 2008.

Filed Aug. 15, 2008.

Marina Serebryanaya, Law Office of Marina Serebryanaya, San Francisco, CA, for Petitioner.

Thomas H. Dupree, Jr., Barry D. Goldman, U.S. Department of Justice, Washington, DC, Ronald E. Lefevre, Office of the District Counsel, Department of Homeland Security, San Francisco, CA, for Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals. Agency No. A79–560–122.

Before: McKEOWN and GOULD, Circuit Judges, and SCHIAVELLI,* District Judge.

## MEMORANDUM **

Tunde Maria Kacso ("Petitioner"), a citizen of Romania, petitions for review of the Board of Immigration Appeals' ("BIA") order affirming the Immigration Judge's ("IJ") denial of her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The BIA's decision was based on the IJ's determination that Petitioner's contentions of oppression were not credible. The only issue on appeal is whether substantial evidence supports the adverse credibility determination that led the BIA to affirm the IJ's determination.[1]

We have jurisdiction pursuant to 8 U.S.C. § 1252, and deny the petition for review.

This Court reviews the BIA's credibility determinations under the "substantial evidence standard." *Tawadrus v. Ashcroft*, 364 F.3d 1099, 1102 (9th Cir.2004). Under this standard, the administrative findings of fact are conclusive unless the evidence not only supports an opposite conclusion, but compels it. *INS v. Elias–Zacarias*, 502 U.S. 478, 484, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992); *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir.2005).[2] Thus, Petitioner will only prevail if this Court finds Petitioner's evidence "so compelling that no reasonable factfinder could fail to find" her credible. *See Elias–Zacarias*, 502 U.S. at 483–84, 112 S.Ct. 812; *Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). The reason or reasons for an adverse credibility determination must " 'strike at the heart of the claim' for asylum." *Singh v. Gonzales*, 439 F.3d 1100, 1105 (9th Cir.2006) (citing *Li v. Ashcroft*, 378 F.3d 959, 964 (9th Cir.2004)). A single supported ground for an adverse credibility finding is sufficient if it "relate[s] to the basis for [Petitioner's] alleged fear of persecution" and goes to the heart of the claim. *Chebchoub v. INS*, 257 F.3d 1038, 1043 (9th Cir.2001) (internal quotation marks and citation omitted).

The BIA focused on two issues in affirming the IJ's determination below: (1) the determination that Petitioner lacked credibility due to the inconsistencies regarding the March 1990 mailing of the

---

* The Honorable George P. Schiavelli, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

1. The parties are familiar with the facts, so we need not discuss the factual details here.

2. The REAL ID Act provides additional restrictions on the review of an IJ's adverse credibility findings. 8 U.S.C. § 1158(b)(1)(B)(iii). The REAL ID Act does not, however, apply in this case because Petitioner filed her request for asylum, withholding of removal, and relief under CAT before May 11, 2005. *See Kaur*, 418 F.3d at 1064 n. 1.

videotape; and (2) the determination that Petitioner's membership in UDMR did not make it more likely than not that she would be persecuted by the Romanian government if she returned. We conclude that both of these determinations go to the heart of Petitioner's claim and are supported by substantial evidence.

With regard to the March 1990 mailing of the videotape, we find the inconsistencies between Petitioner's testimony and information from the website of Duna TV ("Exhibit 8") were the type of significant discrepancies that can be the basis of an adverse credibility determination. *See Kaur*, 418 F.3d at 1064–65. Here, Petitioner was not confused about a date or other minor detail, but adamantly and consistently stated that she mailed the video to Duna TV on Meszaros street. This contention directly conflicts with the unbiased evidence presented by Exhibit 8. Petitioner consistently stated that she sent the package in 1990 to an entity that did not exist until 1992 and to an address that entity did not use until 1994. Considering these inconsistencies and Petitioner's evasiveness at the hearing, the IJ could have concluded that the details of Petitioner's testimony were the result of fabrication. Moreover, Petitioner's contention that Exhibit 8 should be ignored because the focus of the inquiry should be on the *sending* of the videotape rather than its receipt is unavailing. This argument asks the panel to believe that Petitioner and a friend were willing to face possible persecution for sending a package, but that they did not care enough about whether it arrived to ensure the package was properly addressed.

Based on the above, the IJ's credibility determination was based on "substantial evidence." Because the IJ alone was able to observe Petitioner's tone and demeanor, this panel can only reverse if it finds that Petitioner's evidence compels an opposite finding. Petitioner cannot meet this burden because she could not explain why the unbiased independent evidence in Exhibit 8 flatly contradicted her version of events. Rather than compelling a contrary finding, the evidence supports the decision below.

■ Although the finding above is a sufficient basis for denying the present petition, we will briefly discuss the second ground of the BIA's decision below: the determination that Petitioner would not likely be oppressed upon return to Romania based on her UDMR membership.

In affirming the IJ's determination, the BIA relied upon a State Department country condition report ("Exhibit 7"), which stated that the Romanian government generally respected human rights and that UDMR was part of the ruling government. We find that the BIA properly relied upon Exhibit 7 as supplemental evidence, which undermined Petitioner's general statements about the treatment of ethnic Hungarians and UDMR members in Romania. The State Department report shows that (1) ethnic Hungarians are the largest and most politically powerful minority in Romania, (2) there were no reports of politically motivated killings, or political prisoners in Romania, and (3) the minority facing violence and persecution is the ethnic Roma minority.

The findings in the State Department report are consistent with the reports Petitioner entered into the record. The Human Rights Watch report states that the "government made an effort to improve the status of the ethnic Hungarian minority," but that the "Roma minority continued to face significant discrimination and ill-

treatment." Similarly, the Helsinki Federation for Human Rights report states that the "tensions between ethnic Hungarians and the Romanian majority ... focused on the establishment of a Hungarian-language university" while the Roma minority "were disproportionally subjected to police abuses."

Thus, because Exhibit 7 and Petitioner's own evidence contradict Petitioner's contention that UDMR members and ethnic Hungarians like herself were likely to be persecuted by the Romanian government, the BIA could properly rely upon the country report as supplemental evidence that Petitioner lacked credibility.

In light of the above, Petitioner cannot show that "no reasonable factfinder could fail to find" her credible. Because we find the adverse credibility determination below was based on substantial evidence, the petition for review is **DENIED**.