**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

MAY 14 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| DANIEL CACHAY-SORIANO, | No. 10-71889 |
| Petitioner, | Agency No. A075-309-338 |
| v. | |
| ERIC H. HOLDER, Jr., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted February 12, 2014
San Francisco, California

Before: CALLAHAN and M. SMITH, Circuit Judges, and KORMAN, Senior
District Judge.[**]

Petitioner Daniel Cachay-Soriano ("Cachay-Soriano"), a native and citizen

of Peru, petitions for review of a decision of the Board of Immigration Appeals

("BIA") affirming an immigration judge's ("IJ") denial of his application for

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

asylum and withholding of removal. Because the parties are familiar with the facts and procedural history of the case, we repeat only those facts necessary to resolve the issues raised on appeal. We deny the petition for review.

1.    The BIA did not exceed the scope of the remand when it addressed Cachay-Soriano's credibility. On remand, the BIA is limited to the issues discussed in the remand order only where the order clearly limits the BIA to those issues. *See Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168, 1172–73 (9th Cir. 2006). *See also United States v. Kellington*, 217 F.3d 1084, 1092–93 (9th Cir. 2000) (courts on remand are generally free to address "anything not foreclosed by the mandate"). Here, while the prior panel instructed the BIA to address Cachay-Soriano's social group and the possibility of relocation, the remand order did not clearly limit the BIA to those issues. Also, given that the BIA found Cachay-Soriano not credible on remand, there was no need for the BIA to also address the social group and relocation issues.

Further, Cachay-Soriano's credibility was already at issue given the IJ's adverse credibility determination. Both *Mendez-Gutierrez* and *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994), a case cited by *Mendez-Gutierrez* and by the dissent, concerned cases where a party was raising a new issue or argument

2

for the first time on remand.  The *Mendez* court found that where the BIA refused

to address a new issue on remand,

> The proper method . . . to raise this argument would have been to file
> a motion to reconsider with the Board . . . . A contrary conclusion
> would allow petitioners carte blanche to raise any new issues on our
> remand, regardless of whether the issues could have or should have
> been raised before, and without giving the discretion to the Board that
> a motion to reconsider or to reopen would afford.

*Mendez-Gutierrez*, 444 F.3d at 1172–73.[1]  In contrast, here Cachay-Soriano's

credibility was already at issue, as the IJ had previously found him not credible.

Further, while a Ninth Circuit panel may presume that the BIA found a

petitioner credible when the BIA makes no credibility determination and does not

reserve this issue, *Briones v. INS*, 175 F.3d 727, 730 (9th Cir. 1999) (en banc), the

prior panel did not address Cachay-Soriano's credibility.  *See Cachay-Soriano v.*

*Holder*, 329 F. App'x 163 (9th Cir. 2009).  Nor does the *Briones* rule apply to the

BIA on remand, even assuming the prior panel presumed that the BIA found

Cachay-Soriano credible.  A Ninth Circuit panel may make such a presumption as

"[a]ny other conclusion would result in unwarranted second-guessing on our part

---

[1]*Pimentel* explained in sentencing cases, "'our general practice . . . is to vacate the entire sentence and remand for resentencing whenever we find that a sentence was imposed in excess of the sentencing court's authority,'" and "[i]n such cases, the district court is empowered to address all sentencing issues following remand."  34 F.33d at 800 (quoting *United States v. Caterino*, 29 F.3d 1390, 1394–95 (9th Cir. 1994)).

and the injection of new issues that the BIA did not raise below." *Damaize-Job v. INS*, 787 F.2d 1332, 1338 (9th Cir. 1986) (citing *Canjura-Flores v. INS*, 784 F.2d 885, 888–89 (9th Cir. 1986)).  In contrast, the BIA may review the record de novo and make its own findings of fact, including credibility determinations, *id.*, and thus there are clearly no concerns of second-guessing that would make the *Briones* presumption applicable to the BIA on remand.

2.      Substantial evidence supports the BIA's adverse credibility determination based on inconsistencies between Cachay-Soriano's original and final asylum applications and inconsistencies between his account and his sister's account of the two attacks.  "So long as one of the identified grounds [for the adverse credibility determination] is supported by substantial evidence and goes to the heart of the claim of persecution," we must accept the adverse credibility determination.  *Tekle v. Mukasey*, 533 F.3d 1044, 1051–52 (9th Cir. 2008) (quoting *Wang v. INS*, 352 F.3d 1250, 1259 (9th Cir. 2003)).  Further, in pre-REAL ID Act cases, minor inconsistencies may support an adverse credibility determination where they are accompanied by other indicia of dishonesty and when the applicant admits lying under oath.  *Kaur v. Gonzales*, 418 F.3d 1061, 1066–67 (9th Cir. 2005).

Here, Cachay-Soriano testified that he knew the entry date he listed on his original asylum application was false and knew he was under oath yet still swore that the contents of his application were true. Such admission is substantial evidence supporting the BIA's adverse credibility determination, notwithstanding the fact that Cachay-Soriano claims he was just doing what his attorney's secretary told him to do. *See id.* This is not a case where the attorney who prepared the asylum application may have "stretched the facts without informing" the asylum applicant. *See Garrovillas v. INS*, 156 F.3d 1010, 1014 (9th Cir. 1998).

The omission of the second attack from Cachay-Soriano's initial asylum application is also substantial evidence in support of the BIA's adverse credibility determination. Cachay-Soriano does not argue that this initial omission was due to the failure of his counsel, instead testifying that he discussed the second attack with his counsel's secretary before his asylum interview but the secretary never prepared a supplemental statement regarding that attack. Further, Cachay-Soriano does not point to any case law holding that an inconsistency may not be the basis of an adverse credibility determination where the petitioner corrects the inconsistency prior to the IJ hearing and then testifies consistently with the correction.

The inconsistencies between Cachay-Soriano's testimony and his sister's testimony regarding who was injured in the first attack and why he was attacked are also substantial evidence for the BIA's adverse credibility determination. Though his sister was not present when the first attack occurred, she arrived at the scene shortly thereafter, and the detail regarding who was injured in the first attack goes to the heart of Cachay-Soriano's claim. Further, Cachay-Soriano's explanation that his attackers demanded to know the location of his brother-in-law is completely at odds with his sister's testimony that the attackers beat him because they mistook him for his brother-in-law.

The inconsistency regarding the timing of the second attack is also substantial evidence in support of the BIA's adverse credibility determination. Cachay-Soriano's sister testified that 1) she found out about the attack after calling her brother's home and 2) it occurred after she entered the U.S. in July 1993 or 1994. In contrast, Cachay-Soriano testified that the second attack occurred in March 1993. Such inconsistency regarding this pivotal event clearly goes to the heart of his claim.

3.      In light of the BIA's determinations regarding Cachay-Soriano's credibility, the denial of his asylum application was supported by substantial evidence. Given that Cachay-Soriano has not met the lower standard for asylum,

6

he has failed to meet his burden of proof for withholding of removal.  *See Al-Harbi*

*v. INS*, 242 F.3d 882, 888-89 (9th Cir. 2001) (citing, inter alia, *INS v.*

*Cardoza-Fonseca*, 480 U.S. 421, 449-50 (1987)).

**PETITION DENIED.**

KORMAN, District Judge, dissenting:

Daniel Cachay-Soriano, a native and citizen of Peru, initially petitioned for review of an order of the Board of Immigration Appeals ("BIA") dismissing his appeal from an immigration judge's ("IJ") decision denying his application for asylum and withholding of removal. While the IJ had made a credibility finding adverse to Cachay-Soriano, the BIA accepted Cachay-Soriano's testimony as credible. AR 102. Indeed, it summarized the transcript containing the threats directed at, and the public beating of, Cachay-Soriano, and it affirmed the decision of the IJ based solely on its finding that "the failure of respondent to establish a nexus between his circumstances in Peru and one of the protected grounds [was] dispositive of [the] matter." AR 102.

In considering Cachay-Soriano's petition for review we presumed that the issue of petitioner's credibility had been resolved in his favor. *Cachay-Soriano v. Holder*, 329 F. App'x 163 (9th Cir. 2009). This presumption was consistent with the practice that we follow when a BIA "decision is silent on the issue of credibility, and the Board has fully explained the rationale behind its decision[.]" *Damaize-Job v. I.N.S.*, 787 F.2d 1332, 1338 (9thCir. 1986). Under these circumstances, "we . . . presume that the Board found the petitioner credible, and proceed to review the Board's decision." *Id.*

Consistent with our practice, we then "remand[ed] to the BIA to consider whether Cachay-Soriano was targeted on account of his membership in a particular

1

social group consisting of family members of his brother-in-law." *Cachay-Soriano*, 329 F. App'x 163. Moreover, because "the BIA failed to address whether internal relocation is reasonable and it is unclear whether internal relocation is a question of fact, subject to clear error review by the BIA, or a question of law, subject to de novo review by the BIA, . . . we remand[ed] on this issue as well." *Id.*

On remand, the BIA did not address either of these two issues. Instead, at the urging of the Department for Homeland Security, it affirmed the initial decision of the IJ because it found no clear error in the credibility determinations by the IJ. Nevertheless, the majority holds that "[t]he BIA did not exceed the scope of its remand when it addressed Cachay-Soriano's credibility" for the first time on remand because "the BIA is limited to the issues discussed in the remand order only where the order clearly limits the BIA to those issues." This holding overlooks the manner in which we have applied the rule limiting the scope of the BIA's authority on remand. We have never held that the our remand order must *in haec verba* limit the scope of the BIA's authority on remand.

*Mendez-Gutierrez v. Gonzales*, 444 F.3d 1168 (9th Cir. 2006), is directly on point. When the petitioner's appeal from the order of the BIA was before us we "grant[ed] the petition and remand[ed] to the BIA for reconsideration of whether Mendez-Gutierrez ha[d] established a prima facie case of eligibility for asylum."

2

*Mendez-Gutierrez v. Ashcroft*, 340 F.3d 865, 870 (9th Cir. 2003). On remand, the BIA addressed the issue described in the remand order. Nevertheless, the petitioner attempted to raise other issues that were beyond the scope of the remand and the BIA declined to do so, precisely for that reason. *Gonzales*, 444 F.3d at 1172-73. On appeal, we upheld the BIA's interpretation of the scope of its authority on remand. *Id.*

We began by observing that "[w]hether the Board is bound by the scope of our remand appears to be a question of first impression for this and other circuits." *Id.* at 1172. In addressing this issue, we observed that "in both civil and criminal cases," we have held "that a district is limited by this court's remand in situations where the scope of the remand is clear." *Id.* The criminal case upon which we relied was *United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994). There, "we had remanded Pimentel's sentence to the district court for a determination whether and to what extent to depart from the sentencing guidelines based on Pimentel's family circumstances." *Gonzales*, 444 F.3d at 1172 (citing *Pimentel*, 34 F.3d at 800). Nevertheless, on remand, Pimentel argued for the first time that the district court erred by failing to group the counts of conviction when calculating the offense level. We held that, "[i]n light of [the] clear evidence that the scope of our remand was limited to the single sentencing issue raised in Pimentel's prior appeal, the district court was without

3

authority to reexamine any other sentencing issues on remand." *Id.* (quoting *Pimentel*, 34 F.3d at 800).

The holding in *Pimentel* was consistent with *Twentieth Century Fox Film Corp. v. Entertainment Distributing*, 429 F.3d 869, 883 (9th Cir. 2005), in which we vacated the district court's grant of summary judgment on the plaintiffs' copyright infringement claim as to one particular issue. The district court restricted the scope of the trial in a manner consistent with the scope of the remand. *Id.* On appeal, we rejected plaintiffs' argument that the district court erred by restricting the scope of the trial on remand. *Id.* at 882-83 In rejecting that argument we held that "[t]here is nothing in our prior decision that indicates that we issued an open remand. Rather, in remanding to the district court, our opinion contemplates a trial to resolve the only remaining genuine issue of material fact." *Id.* at 883.

Relying on *Pimentel* and *Twentieth Century Fox*, as well as other cases, we concluded in *Mendez-Gutierrez v. Gonzales* that "there is no justification to treat the Board differently from the district court when we issue a limited remand. Both are operating pursuant to an order of this court requiring specific action. The Board, like the district court, has no power to expand our remand beyond the boundary ordered by our court." *Gonzales* 444 F.3d at 1173.

There may be occasions where either the district court or the BIA considers and

4

decides the issues that it was directed to address in the order of remand and there remain other issues that need to be resolved. The resolution of those collateral issues may be appropriate even if they do not come within the strict language of the order of remand. *See, e.g.*, *United States v. Kellington*, 217 F.3d 1084, 1094 n.11 (9th Cir. 2000) (compiling cases). This is not such a case, if only because the BIA did not consider the issues that it was directed to address. Instead, it relied on a credibility finding which our prior decision assumed to have been resolved in Cachay-Soriano's favor.

The order on remand in this case cannot be distinguished from the order in *Mendez-Gutierrez*. In both cases, the remand was ordered for consideration of specific legal issues in virtually identical language. In *Mendez-Gutierrez*, we affirmed the BIA's refusal to consider issues beyond the single issue that we asked it to consider on remand. *Id.* at 1172-73. In the present case, the BIA ignored its own prior decision in *Mendez-Gutierrez*, as well as the order of remand in this case. Notwithstanding the obvious similarity between the orders of remand in *Mendez-Gutierrez* and this case, the majority affirms the BIA. Only one fact is different. In *Mendez-Gutierrez*, it was the alien who sought unsuccessfully to expand the issue on remand. *Id.* at 1172. In the present case, it was the Department of Homeland Security which successfully sought to expand the issues on remand. Our case law provides no

5

justification for such disparate treatment.  I believe there should be one rule for both. I would grant the petition and remand the case to the BIA to resolve the issues that we directed it to consider in our prior order.