**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 17 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| HENRI ANTOINE BA, Petitioner, v. WILLIAM P. BARR, Attorney General, Respondent. | No. 13-70876 Agency No. A079-267-329 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 10, 2019
Pasadena, California

Before: O'SCANNLAIN, PAEZ, and OWENS, Circuit Judges.

Henri Antoine Ba, a Senegalese citizen from the country's southern region

of Casamance, petitions for review of the Board of Immigration Appeals' (BIA's)

denial of his application for asylum, withholding of removal, and relief under the

Convention Against Torture (CAT). We have jurisdiction under 8 U.S.C. §

1252(a). For the reasons explained below, we grant the petition and remand for

further proceedings.

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

**1.** The government argues that our jurisdiction is limited in light of the Immigration Judge's (IJ's) determination—in the context of Ba's subsequent application for adjustment of status—that the statutory terrorism bar applies to Ba's asylum application. We disagree. Under 8 U.S.C. § 1158(b)(2)(D), we cannot review the Attorney General's determination that an applicant is ineligible for asylum because of the statutory terrorism bar. *See Bellout v. Ashcroft*, 363 F.3d 975, 977 (9th Cir. 2004). But no such determination was made here. The BIA and IJ denied Ba asylum on the basis of Ba's credibility and declined to decide whether the terrorism bar applied. Thus, 8 U.S.C. § 1158(b)(2)(D) does not limit our review of the agency's denial of Ba's asylum application.[1]

**2.** Substantial evidence does not support the adverse credibility determination underlying the denial of Ba's application for asylum. *See Diaz-Jimenez v. Sessions*, 902 F.3d 955, 958 (9th Cir. 2018).

The BIA and IJ both relied on discrepancies in Ba's account regarding his role with a regional separatist movement, Mouvement des Forces Démocratiques de Casamance ("MFDC"). For pre-REAL ID Act claims like Ba's asylum application, "[i]t is well settled in our circuit that minor inconsistencies that do not go to the heart of an applicant's claim for asylum cannot support an adverse

---

[1] We express no views on the applicability of the statutory terrorism bar, which the government may assert on remand.

2

credibility determination." *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005). But the discrepancies regarding whether Ba sold MFDC membership cards or encouraged others to join the organization are "neither substantial nor go to the heart of [Ba's] claims of past persecution." *Morgan v. Mukasey*, 529 F.3d 1202, 1207 (9th Cir. 2008). For example, Ba's account of the persecution he experienced involved witnessing a summary execution after being pulled off a bus due to his Diola ethnicity. *See generally Ndom v. Ashcroft*, 384 F.3d 743, 748 (9th Cir. 2004) (describing government persecution against ethnic Diola in Casamance). Ba's inconsistent testimony regarding his role with the MFDC "reveal[s] nothing about [his] fear for [his] safety." *See Kaur v. Ashcroft*, 379 F.3d 876, 884 (9th Cir. 2004); *see also Guan v. Barr*, 925 F.3d 1022, 1035 (9th Cir. 2019). To be sure, the record supports Ba's explanations for these inconsistencies, including that Ba struggled with English, memory issues, and the effects of Post-Traumatic Stress Disorder consistent with torture. But because these inconsistencies do not go to the heart of Ba's claim of past persecution in any event, they do not support the adverse credibility determination here. *See Yan Xia Zhu v. Mukasey*, 537 F.3d 1034, 1043 (9th Cir. 2008).

The BIA and IJ also pointed to the several letters Ba offered in support of his application. The letters—from Ba's mother and two people Ba described as father figures—generally support Ba's account. Specifically, the letters note that Ba was

targeted by authorities, had witnessed confrontations with soldiers, faced "constant harassment" by state authorities, would likely be killed by summary execution, torture, or imprisonment if Ba returned, and that the situation in Casamance only worsened after Ba's departure. But the IJ found it to be significant that none of the letters discussed Ba's arrest fifteen years earlier. Initially, "[s]upplying corroborating affidavits . . . has never been required to establish an applicant's credibility." *Lopez-Reyes v. I.N.S.*, 79 F.3d 908, 912 (9th Cir. 1996). And the IJ's opinion about what the letters should have contained—especially Ba's uncle's letter, entitled "Re: Expression of New Year's Wishes" and which did not discuss Ba at all—constitutes "impermissible speculation and conjecture" that cannot support an adverse credibility determination. *Ge v. Ashcroft*, 367 F.3d 1121, 1124 (9th Cir. 2004).

In sum, the inconsistencies upon which the BIA relied do not go to the heart of Ba's claim of past persecution and the independent evidence Ba provided supports rather than contradicts his account. Accordingly, we hold that the adverse credibility finding was not supported by substantial evidence. Having held that the adverse credibility finding is not supported by substantial evidence, we will grant the petition for review and remand to the BIA for a determination of whether Ba is eligible for asylum, withholding of removal, or CAT relief. *See Yan Xia Zhu*, 537 F.3d at 1045–46.

4

Petition for review GRANTED and REMANDED.

FILED

JAN 17 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

O'SCANNLAIN, Circuit Judge, dissenting:

Since I would dismiss Henri Antoine Ba's petition with respect to his request for asylum and deny his petition with respect to his requests for withholding of removal and relief under the Convention Against Torture (CAT), I must respectfully dissent from the court's disposition.

I

I believe that we lack jurisdiction to review the denial of Ba's asylum application. The Board of Immigration Appeals' (BIA's) affirmance of the Immigration Judge's (IJ's) determination that Ba is subject to the terrorism bar, 8 U.S.C. § 1182(a)(3)(B), forecloses his eligibility for asylum, *id.* § 1158(b)(2)(A)(v). Such determination simply is not subject to judicial review. *Id.* § 1158(b)(2)(D).

The majority contends that we retain jurisdiction because the IJ determined that the statutory terrorism bar applied "in the context of Ba's subsequent application for adjustment of status," not his initial application for asylum. Maj. at 2. Respectfully, I suggest that the majority is mistaken. Ba did not go through two separate sets of proceedings—one for the asylum, withholding of removal, and CAT relief, the other for adjustment of status. He was the subject of only one set of proceedings, which the BIA reopened upon Ba's request. Furthermore, there is nothing more for the BIA to decide regarding Ba's eligibility for asylum. Once the

IJ found that Ba was subject to the terrorism bar, he was automatically ineligible for asylum. No additional finding was required.

## II

For the same reason, I would also deny his petition with respect to his requests for withholding of removal and CAT relief in the form of withholding. Once an IJ determines that an alien is covered by the terrorism bar, such alien is automatically ineligible for withholding of removal, 8 U.S.C. §§ 1227(a)(4)(B), 1231(b)(3)(B)(iv), and CAT protection in the form of withholding, 8 C.F.R. § 1208.16(d)(2). Because the IJ determined (and the BIA affirmed) that Ba engaged in terrorist activities, he was automatically made ineligible for these other forms of relief.

## III

Even though Ba is subject to the terrorism bar, he is still eligible for CAT relief in the form of deferral. 8 C.F.R. § 1208.17; *see also Haile v. Holder*, 658 F.3d 1122, 1125–26 (9th Cir. 2011) ("Aliens who have engaged in terrorist activities are precluded from seeking several forms of relief from removal, including asylum, withholding, and CAT protection in the form of withholding, but remain eligible for deferral of removal under the CAT."). With respect to such form of relief, I would deny Ba's petition because substantial evidence supports the adverse credibility determination and the independent record evidence does not compel the conclusion that Ba is more likely than not to be tortured if he returns to Senegal.

A

Because this is a pre-REAL ID Act case, an adverse credibility determination must be based on a material discrepancy that goes to the heart of the applicant's claim. *Kaur v. Gonzales*, 418 F.3d 1061, 1064 (9th Cir. 2005). The majority contends that the discrepancies in Ba's testimony regarding his involvement with the Mouvement des Forces Démocratiques de Casamance (MFDC) do not go to the heart of his claims of past persecution. Maj. at 3. Once again, I respectfully suggest that the majority is mistaken.

Ba's claims of past persecution stem from the conflict in the Casamance. The MFDC is a participant in that conflict. If the IJ found that there was reason to doubt Ba's testimony about his membership in a group that is a party to the conflict, then it was reasonable for the IJ to question the credibility of Ba's testimony about persecution that he allegedly suffered in that same conflict. *See Enying Li v. Holder*, 738 F.3d 1160, 1162 (9th Cir. 2013) (holding that "an IJ may use the maxim *falsus in uno, falsus in omnibus . . .* to find that material inconsistencies in testimony regarding one claim support an adverse credibility determination on another claim in a pre-REAL ID Act case"). For example, one of Ba's claims of past persecution is that he was injured by Senegalese soldiers in 1982 while participating in a protest for Casamance independence. If the IJ found that Ba was not truthful about his membership in a group that supports Casamance independence, then it was

3

reasonable for the IJ to doubt Ba's claim that he was injured in a protest for that very same cause.

Granted, it is possible that Ba participated and was injured in a protest for Casamance independence but was not an active member of the MFDC. However, we do not reverse the BIA's factual findings based on the mere possibility of error. We review factual findings, including adverse credibility determinations, for substantial evidence. *Lianhua Jiang v. Holder*, 754 F.3d 733, 738 (9th Cir. 2014). Here, the evidence does not compel the conclusion that the BIA's adverse credibility determination was erroneous. On the contrary, in light of the material inconsistencies in Ba's testimony about his membership in the MFDC, the BIA's findings were eminently reasonable.

B

Nor does the record evidence, standing alone, compel the conclusion that Ba is more likely than not to be tortured if he returns to Senegal. *Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010).

For example, Ba offers up medical evaluations to prove that he was the victim of torture. But while these evaluations state that Ba has had symptoms consistent with torture, they do not establish that he was tortured, much less that he is more likely than not to be tortured in the future.

4

Ba presents several letters in support of his application. Unlike the majority, however, I do not think this evidence is helpful to Ba's case. Maj. at 3–4. Ba's uncle describes his own torture and imprisonment but says nothing about Ba's experiences. Ba's mother discusses her concerns about ongoing harassment from Senegalese authorities, but she does not suggest that Ba is likely to be tortured if he returns. The letter from Abbot Augustin Diamacoune Senghor appears to offer the most support to Ba's claims: It says that Ba is likely to be imprisoned, tortured, or executed if he goes back to Senegal. However, the author of the letter was the Secretary General of the MFDC—the same terrorist organization of which Ba has inconsistently claimed to have been a member, hardly compelling evidence.

Finally, although the country reports included in the administrative record suggest that Senegal is a troubled place where torture and other human rights abuses have occurred, they do not compel the conclusion that Ba, specifically, is more likely than not to be tortured if he returns.

5