**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SALVADOR AMAYA ANDRADE,
*Petitioner*,

v.

LORETTA E. LYNCH, Attorney
General,
*Respondent*.

No. 12-70803

Agency No.
A029-143-032

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 6, 2015[*]
Seattle, Washington

Filed August 27, 2015

Before: J. Clifford Wallace, Andrew J. Kleinfeld,
and Morgan Christen, Circuit Judges.

Per Curiam Opinion

---

[*] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## SUMMARY[**]

### Immigration

The panel denied a petition for review of the Board of Immigration Appeals' denial of deferral of removal under the Convention Against Torture.

The panel held that the evidence did not compel the conclusion that petitioner established it was more likely than not he would be tortured in El Salvador due to his non-gang tattoos.

### COUNSEL

Alma David, Rios & Cruz, P.S., Seattle, Washington, for Petitioner.

James A. Hurley, Attorney, Thomas B. Fatouros, Senior Litigation Counsel, and Stuart F. Delery, Principal Deputy Assistant Attorney General, Civil Division, Office of Immigration Litigation, Department of Justice, Washington, D.C., for Respondent.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

PER CURIAM:

Petitioner Salvador Andrade, a native and citizen of El Salvador, seeks review of a decision issued by the Board of Immigration Appeals (BIA) affirming the Immigration Judge's denial of his application for deferral of removal under the Convention Against Torture.

In 1988, Andrade, then a teenager, illegally entered the United States. Twelve years later he was convicted of child molestation.[1] In 2008, twenty years after he came to the United States, Immigration and Customs Enforcement initiated removal proceedings. Andrade conceded that his child molestation conviction makes him ineligible for withholding of removal, but sought deferral of removal under the Convention Against Torture. His mother and sisters, who still live in El Salvador, have warned of the dangers from gangs there.

The BIA held that Andrade had not established a likelihood that he would be tortured upon his return to El

---

[1] Andrade was convicted of child molestation in the third degree under Revised Code of Washington § 9A.44.089. Revised Code of Washington § 9A.44.089 provides, in pertinent part, that:

> A person is guilty of child molestation in the third degree when the person has, or knowingly causes another person under the age of eighteen to have, sexual contact with another who is at least fourteen years old but less than sixteen years old and not married to the perpetrator and the perpetrator is at least forty-eight months older than the victim.

Salvador, or that its government would perpetrate or turn a blind eye to the torture. Andrade petitions for review, arguing that the BIA failed to give reasoned consideration of country conditions, and that the record compelled the conclusion that torture was likely, largely because his tattoos would cause him to be perceived as a gang member.

The record is oddly devoid of a picture of Andrade's tattoos. All we have is his declaration in support of his asylum petition, and his testimony and the judge's observation in his hearing before the Immigration Judge. Andrade says in his declaration that he got two tattoos in about 2000, one on his bicep, and one on the back of his neck. They are decorative, not gang-related, showing his initials and the initials of his girlfriend in around 2000. The Immigration Judge asked him to roll up his sleeve, and said "[t]he respondent appears to have a, a pictorial tattoo in the area of his right bicep."

Andrade's country conditions argument is that the BIA did not give "reasoned consideration" to the evidence that deportees and anyone thought to be a gang member will likely be arrested and interrogated, and sometimes are abused by police officers shouting obscenities at them or beating them, and that vigilante squads sometimes kill them. He says that there is evidence that the Salvadoran government turns a blind eye to the possibility of these death squad murders.

Andrade is right that failure of the BIA to consider evidence of country conditions constitutes reversible error where the Country Report has been submitted as evidence, it addresses the risk of torture, and the BIA does not even mention it. *Aguilar Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010) (citing *Al-Saher v. INS*, 268 F.3d 1143, 1147–48

(9th Cir. 2001); *Kamalthas v. INS*, 251 F.3d 1279, 1284 (9th Cir. 2001)).

In this case, unlike *Aguilar-Ramos*, the BIA gave extensive and careful consideration to the Country Report and other materials in evidence regarding conditions in El Salvador. The BIA said that the evidence clearly indicated that suspects, deportees arriving in El Salvador, were subject to arbitrary investigations and detentions, and that former gang members were subject to reprisals, and took note of the evidence of widespread violent crime, gang-related violence, impunity from prosecution and judicial corruption, and vigilante squads. The BIA's consideration of the Country Report and other materials distinguishes the *Aguilar-Ramos* line of authority, applicable to cases where it did not give consideration to submitted materials. Substantial evidence, including the Country Report and other materials, supported the BIA's conclusion that Andrade had not proved that "deportees (with or without tattoos) are *likely* to experience mistreatment rising to the level of *torture*." (emphasis in original).

Andrade's individualized evidence of a likelihood of torture was that he bore tattoos, and could not afford what it would cost to remove them. We held in *Cole v. Holder* that the BIA's failure to give reasoned consideration to the risk of torture in Honduras on account of the petitioner's gang tattoos required remand. 659 F.3d 762, 773 (9th Cir. 2011). One of Cole's expert witnesses had testified that he had more than a 75% chance of being killed by gang members there because of his Crips tattoos, in addition to risk from vigilantes. *Id.* Cole's tattoos were not his girlfriend's and his initials, like Andrade's. They were gang tattoos, from when he had been in the Crips gang: a teardrop under his eye, a G

behind his ear, and Crips tattoos on his calves, arms and back. *Id.* at 765.

*Cole* establishes that the BIA must consider the risk of torture posed by conspicuous tattoos that display affiliation with a gang, for deportation to a country where gang members are routinely tortured.  It does not establish that any tattoos are enough to justify Convention Against Torture relief.  The BIA took note of Andrade's tattoos, and that he was not a former gang member and that the tattoos were not gang-related.   Substantial evidence supported the BIA's denial of relief on the ground that Andrade's individual characteristics, being deported from a richer country and bearing non-gang tattoos, failed to establish a probability of torture upon his return to El Salvador.

To obtain Convention Against Torture relief, a petitioner must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2); *Cole*, 659 F.3d at 770. The petitioner bears the burden of proof, 8 C.F.R. § 208.16(c)(2), and the BIA's factual findings must be upheld "unless the evidence in the record compels a contrary conclusion."   *Cole*, 659 F.3d at 770 (quoting *Arteaga v. Mukasey*, 511 F.3d 940, 944 (9th Cir. 2007)).  The evidence in the record did not compel a  contrary conclusion in this case.

**Petition DENIED.**