
**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| HORATIU CHRISTIAN FARKAS, | No.    12-74182 |
| Petitioner, | Agency No. A088-351-639 |
| v. | |
| JEFFERSON B. SESSIONS III, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted May 17, 2017[**]
San Francisco, California

Before:  THOMAS, Chief Judge, MURGUIA, Circuit Judge, and MCCALLA,[***] District Judge.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument.  *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

Horatiu Farkas, a citizen of Romania, petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming the denial of his claims for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction pursuant to 8 U.S.C. § 1252. We review the BIA's decision for substantial evidence. *Karouni v. Gonzales*, 399 F.3d 1163, 1170 (9th Cir. 2005).

Farkas belongs to the Roma ethnic group, and claims persecution on the basis of this ethnicity. He claims to have been abandoned by his parents and raised by neighbors. Farkas alleges that he was mistreated throughout his education by other students and by teachers; he also maintains that this persecution continued through school and into his workplace.

Farkas' claim of persecution centers primarily on an incident in which he witnessed a drunk police chief urinating in public outside the restaurant where Farkas worked. When Farkas confronted the police chief, the chief hurled racial, anti-Roma epithets at Farkas and proceeded to physically and verbally assault him at work over the next few months. Throughout this time, Farkas' employer provided no assistance. In fact, when Farkas resigned from his job, Farkas' employer allegedly provided a recommendation letter filled with lies about the quantity and quality of Farkas' work.

2

The Immigration Judge ("IJ") denied Farkas' claims for asylum, withholding of removal, and CAT relief after finding that Farkas was not credible. The IJ first noted that Farkas' composure changed between direct and cross examination, finding that the Farkas' answers became increasingly halting or hesitant and that he looked down at his lap during cross examination. Next, the IJ determined that there were several inconsistencies and implausibilities, ranging from Farkas' description of his childhood to Farkas' testimony about the harassment he endured from the police chief.

Under the REAL ID Act, an IJ may make adverse credibility determinations considering the "totality of the circumstances, and all relevant factors." 8 U.S.C. § 1158(b)(1)(B)(iii). Applying this standard, an adverse credibility determination may be based on an inconsistency, regardless of whether it is at "the heart of the applicant's claim." *Id.* "The deference that the REAL ID Act requires makes sense because IJs are in the best position to assess demeanor and other credibility cues that we cannot readily access on review." *Shrestha v. Holder*, 590 F.3d 1034, 1041 (9th Cir. 2010). "We give 'special deference' to a credibility determination that is based on demeanor." *Jibril v. Gonzales*, 423 F.3d 1129, 1137 (9th Cir. 2005). In this case, we find no basis for rejecting the IJ's judgment, which was supported by cogent reasons, including a demeanor that detracted from Farkas' credibility

during cross-examination as well as inconsistencies in Farkas' testimony regarding his childhood, employment, and incidents of harassment.

Because Farkas' testimony was not credible, he has not established past persecution or a well-founded fear of future persecution, and his asylum claim must fail. 8 C.F.R. § 208.13(b). It follows that Farkas cannot meet the more stringent standard for withholding of removal. *See Loho v. Mukasey*, 531 F.3d 1016, 1019 (9th Cir. 2008) (stating that petitioner necessarily cannot satisfy the standard of proof required to demonstrate eligibility for withholding of removal where asylum claim is denied). Therefore, the BIA did not err in affirming the IJ's denial of asylum or withholding of removal.

As to the claim for CAT relief, however, the BIA erred. A failure to establish asylum eligibility does not automatically mean a failure to establish eligibility for CAT relief. *Farah v. Ashcroft*, 348 F.3d 1153, 1156–57 (9th Cir. 2003). "Even if the IJ correctly concluded that [the] testimony, *by itself*, was insufficient to meet his burden under CAT, this conclusion would not be dispositive because a CAT applicant may satisfy his burden with evidence of country conditions alone." *Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010).

4

Here, neither the BIA nor the IJ considered Farkas' evidence of country conditions in Romania, which describe general hostility toward people of Roma ethnicity. "[F]ailure of the BIA to consider evidence of country conditions constitutes reversible error where the Country Report has been submitted as evidence, it addresses the risk of torture, and the BIA does not even mention it." *Andrade v. Lynch*, 798 F.3d 1242, 1244 (9th Cir. 2015). Therefore, we grant the petition as to CAT relief and remand for the BIA to reconsider Farkas' claim for CAT relief in light of the country conditions evidence. *See Aguilar-Ramos*, 594 F.3d at 705 ("Because the BIA failed to consider the Country Report at all, the proper course of action is to remand with instructions that the BIA reconsider [petitioner's] CAT claim in light of the Country Report.").

**PETITION DENIED in part, GRANTED in part, and REMANDED.**