**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

NOV 29 2019

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| XIANYANG SHAO, | No. 15-70833 |
| Petitioner, | Agency No. A201-037-809 |
| v. | |
| WILLIAM P. BARR, Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted October 22, 2019
San Francisco, California

Before: WALLACE and MURGUIA, Circuit Judges, and LASNIK,[**] District
Judge.

Xianyang Shao, a native and citizen of the People's Republic of China,

petitions for review of the decision of the Board of Immigration Appeals (Board)

affirming the Immigration Judge's (IJ) denial of his application for asylum,

withholding from removal, and protection under Article III of the Convention

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

Against Torture (CAT). We have jurisdiction under 8 U.S.C. section 1252(a)(1). Because the Board "conducted its own review of the evidence and law" and did not "expressly adopt" the IJ's decision, we independently review the Board's decision. *Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006) (citation omitted). We deny in part and grant in part the petition for review, and we remand to the Board.

Substantial evidence supports the IJ's adverse credibility finding, which the Board affirmed. In finding Shao not credible, the IJ offered "specific cogent" reasons and based her finding on the "totality of circumstances." *Garcia v. Holder*, 749 F.3d 785, 789 (9th Cir. 2014) (citation omitted). That Shao's passport was issued four days before the date on which he testified he was arrested was not a trivial detail. Shao testified that he left China and sought asylum in the United States when he did because he was "detained" and "arrested" by the Chinese government. Whether Shao was arrested before or after his passport was issued was material to his claim for asylum. *See Shrestha v. Holder*, 590 F.3d 1034, 1046–47 (9th Cir. 2010) ("Although inconsistencies no longer need to go to the heart of the petitioner's claim, when an inconsistency is at the heart of the claim it doubtless is of great weight").

This case is unlike those in which we have reversed an IJ's adverse credibility finding based on an applicant's "failure to remember non-material, trivial details that were only incidentally related to [his] claim[s] of persecution." *Kaur v. Gonzales*,

2

418 F.3d 1061, 1064 (9th Cir. 2005). For example, in *Bandaris v. I.N.S.*, the applicant had inconsistently testified about whether he was sentenced to 75 lashes or whipped 75 times on the date of his arrest. *See* 227 F.3d 1160 (9th Cir. 2000). There, we reversed the IJ's adverse credibility finding because the specific date the applicant had received a type of beating, among many attacks over several days, was a trivial matter about which the applicant had no reason to be untruthful. *See id.* at 1166.

Similarly, in *Ren v. Holder*, we reversed the IJ's adverse credibility finding where the asylum applicant (1) had declared in his written statement that he had been unconscious on the *third* day of his detention contradicting his in-court testimony that the incident occurred on the *second* day; (2) was unable to recall the specific month of his arrest; and (3) testified incorrectly about the date of his baptism before immediately correcting himself. *See* 648 F.3d 1079, 1085–89 (9th Cir. 2011). We held that the applicant's uncertainty about those specific dates had "no bearing on [his] veracity." *Id.* at 1089.

Unlike the findings in those cases, the IJ's adverse credibility finding here, which the Board affirmed, was based on inconsistent testimony probative of Shao's veracity. According to the Board, Shao "testified that he had applied for his passport after his arrest, but his passport was issued on April 14, 2010, 4 days before the date that he claims he was arrested." Shao's testimony calls into question whether the

3

arrest was truly Shao's catalyst for leaving China and seeking asylum in the United States. *See Singh v. Gonzales*, 439 F.3d 1100, 1108 (9th Cir. 2006), *overruled on other grounds by Maldonado v. Lynch*, 786 F.3d 1155 (9th Cir. 2015) (stating that a "single supported  ground for an adverse credibility finding is sufficient if it relates to the basis for petitioner's alleged fear of persecution and goes to the heart of the claim," and  an "inconsistency goes to the heart of a claim if it concerns events central to petitioner's version of why he was persecuted and fled") (alteration, internal quotation marks, and citations omitted).

The thoughtful dissent suggests our review should be limited to Shao's testimony that he "'got'—i.e., physically obtained—his passport after he was arrested, which is consistent with a passport issuance date prior to the date of his arrest." The dissent then concludes that we rely on reasoning "not part of the BIA's decision, and this Court's review is confined to the reasoning provided by the BIA."

We agree that, because the Board did not expressly adopt the IJ's decision, we must only review the reasons identified in the Board's decision.  However, the dissent does not explain why our review should be further confined to Shao's singular testimony that he "got" his passport after he was arrested.  The dissent also does not persuasively explain why we may not use the IJ's oral decision as a guide to reviewing the Board's decision.

The Board evaluated Shao's testimony "in light of all the evidence presented

4

in the case." *Kaur*, 418 F.3d at 1066 (citation omitted). The Board "view[ed] each portion of [Shao's] testimony, not solely as independent pieces of evidence with no bearing on the testimony as a whole, but in light of all of the evidence presented." *Id.* *Kaur* stands for the proposition that the IJ and the Board must review an applicant's testimony in the context in which it was presented. *See Tekle v. Mukasey*, 533 F.3d 1044, 1052 (9th Cir. 2008) (reversing IJ's adverse credibility finding where the IJ characterized evidence out of context).

In explaining the inconsistency in Shao's testimony, the Board cited the portion of the transcript in which Shao testified that before his arrest, he had no "problems at all" at with his job. In the same portion of the transcript, Shao testified that he "came to the U.S. . . . to flee the government's detention." Against this backdrop, Shao testified that he obtained his passport after he was arrested. Given Shao's testimony as a whole, the IJ found that Shao's credibility was undermined when he testified that "he obtained his passport in order to leave China because of the persecution he endured." Citing to the relevant portions of Shao's testimony, the Board affirmed *that* finding, holding that Shao was not credible for testifying that "he had applied for his passport after his arrest."

Shao fails to establish that "any reasonable adjudicator would be compelled" to disagree with the IJ's adverse credibility finding based on Shao's testimony that he obtained his passport to leave China after he was arrested. 8 U.S.C. §

5

1252(b)(4)(B) (emphasis added); *see also Kozulin v. I.N.S.*, 218 F.3d 1112, 1115 (9th Cir. 2000) (stating that when the Board conducts a clear error review, as was done here, "we look to the IJ's oral decision as a guide to what lay behind the [Board's] conclusion") (citations omitted).

In addition, other inconsistencies in Shao's testimony, such as his claim that he was arrested before Easter, when Easter had been two weeks before, deprived Shao's asylum claim of the "requisite ring of truth." *Rizk v. Holder*, 629 F.3d 1083, 1088 (9th Cir. 2011) (internal quotation marks and citation omitted). Shao's explanation that he had just converted to Christianity and was not familiar with Christian festivals contradicted his earlier testimony that he had become a Christian six months before the arrest and had attended church services on a weekly basis for the past six months.

Because Shao was not credible, he was not eligible for asylum. *See Farah v. Ashcroft*, 348 F.3d 1153, 1156 (9th Cir. 2003). Because Shao was not eligible for asylum, he failed to meet the more stringent standard for withholding of removal. *See Pedro-Mateo v. I.N.S.*, 224 F.3d 1147, 1150 (9th Cir. 2000) ("A failure to satisfy the lower standard of proof required to establish eligibility for asylum therefore necessarily results in a failure to demonstrate eligibility for withholding of deportation") (citation omitted). We therefore deny Shao's petition for review of the Board's decision as to his asylum and withholding of removal claims.

6

Despite the IJ's adverse credibility finding, Shao may still be entitled to relief under CAT if the country conditions compel the conclusion that he would more likely than not be tortured if he returned to China. *See Shrestha*, 590 F.3d at 1048–49 (citation omitted). In evaluating the CAT claim, the Board was required to consider all of the record evidence, including the country conditions in China, when it assessed whether Shao was entitled to relief under CAT. *See Al-Saher v. I.N.S.*, 268 F.3d 1143, 1147 (9th Cir. 2001), *amended*, 355 F.3d 1140 (9th Cir. 2004). We presume that the Board "thoroughly consider[ed] all relevant evidence in the record." *Szonyi v. Whitaker*, 915 F.3d 1228, 1258 (9th Cir. 2019) (citations omitted). Although the Board was required to consider all of the evidence, it did not need to "discuss each piece of evidence submitted." *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011).

In its decision, the Board referenced Shao's CAT claim in a single sentence, concluding that Shao had "not established that he is more likely than not to be tortured in China." The Board never mentioned the record evidence of the country conditions in China even though the Country Reports on Human Practices for 2011 in China, which addressed the risk of torture, and United States Commission on International Religious Freedom 2012 Annual Report, among other documents, were admitted in the record. The Board did not imply—even in general language—that it had reviewed the record evidence of country conditions in China. The Board's

7

failure to consider evidence of the country conditions in China was "reversible error" because the country reports had been "submitted as evidence," the reports "addresse[d] the risk of torture," and the Board did "not even mention" the reports in its decision. *Andrade v. Lynch*, 798 F.3d 1242, 1244 (9th Cir. 2015) (citations omitted).

We reject as premature the government's argument that the Board's error was harmless. *See Aguilar-Ramos v. Holder*, 594 F.3d 701, 705 (9th Cir. 2010). Because the Board "failed to consider the Country Report at all, the proper course of action is to remand with instructions that the [Board] reconsider [the] CAT claim in light of the Country Report." *Id.* Accordingly, we remand with instructions for the Board to reconsider Shao's CAT claim in light of the entire record, including the country reports.

**PETITION DENIED IN PART, GRANTED IN PART, AND REMANDED.**

*Shao v. Barr*, No. 15-70833

MURGUIA, Circuit Judge, concurring in part and dissenting in part:

Although I agree that the Board of Immigration Appeals ("BIA") did not consider the country reports in connection with Shao's claim under the Convention Against Torture, I disagree that the two inconsistencies on which the BIA relied to uphold the Immigration Judge ("IJ")'s adverse credibility finding amount to substantial evidence. Therefore, I would also grant the petition as to asylum and withholding of removal.

First, the BIA concluded that Shao offered inconsistent testimony about the exact date of his arrest. Shao consistently testified that he was arrested on April 18, 2010 on four different occasions—once in his asylum application and three times during his testimony before the IJ. But he also stated on one occasion during his asylum hearing that he was arrested "before the Easter came," which happened to fall on April 4, 2010 the year he was arrested. This isolated and minor discrepancy as to his arrest date is too trivial to support an adverse credibility finding under our precedent. *See Ren v. Holder*, 648 F.3d 1079, 1086 (9th Cir. 2011) ("[G]iven the recognized difficulty that people in general, and victims of abuse in particular, have with recalling dates, an asylum applicant's failure to be specific about the date of a traumatic experience is rarely probative of his or her veracity.").

1

Second, the BIA concluded that Shao testified inconsistently because he stated "that he had applied for his passport after his arrest, but his passport was issued on April 14, 2010, 4 days before the date that he claims he was arrested." However, Shao never testified that he applied for his passport after he was arrested. He only testified that he "got"—i.e., physically obtained—his passport after he was arrested, which is consistent with a passport issuance date prior to the date of his arrest. Therefore, the BIA improperly relied on an inconsistency that does not exist in the record. *See Singh v. Gonzales*, 403 F.3d 1081, 1090 (9th Cir. 2005) (granting petition where "[t]he purported inconsistency identified by the IJ [did] not exist, and [did] not support the adverse credibility determination.").

The majority nonetheless concludes that Shao's testimony about when he obtained his passport is significant because it "calls into question whether the arrest was truly Shao's catalyst for leaving China and seeking asylum in the United States." However, that rationale is not part of the BIA's decision, and this Court's review is confined to the reasoning provided by the BIA. *See Hosseini v. Gonzales*, 471 F.3d 953, 957 (9th Cir. 2006).

The majority suggests that its scope of review is not constrained to the BIA's decision because the BIA considered Shao's testimony "in light of all of the evidence," citing to *Kaur v. Gonzales*, 418 F.3d 1061 (9th Cir. 2005). However, *Kaur* is inapposite here. In that case, we held that, when assessing whether "false

2

statements and other inconsistencies" support an adverse credibility finding, we must view the false or inconsistent testimony "in light of all the evidence presented." 418 F.3d at 1066–67 (holding that inconsistencies were so numerous and blatant that testimony supported adverse credibility finding). Here, the BIA's finding is impermissibly based on purportedly false or inconsistent testimony *that does not exist in the record to begin with*—i.e., testimony that Shao "applied for his passport after his arrest"—an error by the BIA that neither the majority nor *Kaur* addresses.

The majority also contends that we may consider testimony and possible justifications not expressly adopted by the BIA by looking at the IJ's oral decision. However, we look at the IJ's oral decision "as a guide to what lay behind the BIA's conclusion" when the BIA's decision is unclear. *Benyamin v. Holder*, 579 F.3d 970, 974 (9th Cir. 2009) ("Where the standard of review the BIA employed is unclear, we may look to both the BIA's decision and the IJ's oral decision 'as a guide to what lay behind the BIA's conclusion.'" (quoting *Avetova–Elisseva v. INS,* 213 F.3d 1192, 1197 (9th Cir.2000) (reviewing IJ's oral decision where "the lack of analysis that the BIA opinion devoted to the issue at hand – its simple statement of a conclusion – also suggests that the BIA gave significant weight to the IJ's findings"))). Here, the BIA reviewed the IJ's decision for clear error and affirmed the IJ's adverse credibility finding because of two very specific reasons:

a trivial inconsistency as to the arrest date, and an inconsistency that does not exist in the record. Because the BIA's decision is neither ambiguous nor conclusory, there is no basis to extend our review to the IJ's oral decision.

We have consistently held that, because "stakes in asylum proceedings are high and [] serious errors in decisions issued by [IJs] and BIA officials are not unusual," the agency must "provide 'specific and cogent reasons supporting an adverse credibility determination'" in order to make this Court's review of agency action possible. *Ren*, 648 F.3d at 1084–85 (9th Cir. 2011) (quoting *Shrestha v. Holder*, 590 F.3d 1034, 1042 (9th Cir. 2010)). The BIA did not offer the rationale articulated by the majority, and I respectfully disagree we may look beyond the BIA's decision.

Because these two pieces of testimony on which the BIA relied do not amount to substantial evidence to support an adverse credibility finding, I respectfully dissent as to that portion of the majority's disposition.