**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

JUN 11 2020

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| PEDRO ARIAS DE ALVAREZ, AKA Pedro Alberto Arias,<br><br>                    Petitioner,<br><br>    v.<br><br>WILLIAM P. BARR, Attorney General,<br><br>                    Respondent. | No. 15-73257<br><br>Agency No. A077-089-025<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 13, 2020[**]
Pasadena, California

Before:  SCHROEDER, BYBEE, and COLLINS, Circuit Judges.

Pedro Arias De Alvarez ("Arias") petitions for review of the decision of the

Board of Immigration Appeals ("BIA"), which upheld the order of the Immigration

Judge ("IJ") directing his removal to Guatemala.  Arias had moved to terminate his

removal proceedings on the ground that he had acquired derivative U.S. citizenship

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument.  *See* FED. R. APP. P. 34(a)(2)(C).

1

upon his mother's naturalization in 1999, but the IJ rejected this argument. The IJ also denied Arias's request for protection under the United Nations Convention Against Torture ("Torture Convention"). We have jurisdiction under § 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, and we deny the petition.

1. In reviewing whether Arias acquired U.S. citizenship, we apply the version of the derivative citizenship statute in force when Arias turned eighteen in January 2000. *See United States v. Casasola*, 670 F.3d 1023, 1026 (9th Cir. 2012). Under the then-existing terms of § 321 of the INA, Arias would acquire derivative citizenship by virtue of his mother's naturalization if he either [1] was "residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of [his mother], or [2] thereafter beg[an] to reside permanently in the United States while under the age of eighteen years." 8 U.S.C. § 1432(a)(5) (1999 ed.) (repealed effective February 2001). Because Arias did not become a legal permanent resident until June 2001, he was not residing in the U.S. "pursuant to a *lawful admission for permanent residence*" at the time of his mother's naturalization in 1999. *Id*. (emphasis added). Arias nonetheless argues that, because he has been living continuously in the U.S. since 1990, he is covered by the second clause of § 321(a)(5), which did not expressly refer to a "lawful admission" and required only that he begin "to reside permanently" in the U.S.

2

while under age 18.  We rejected this precise argument in *Romero-Ruiz v. Mukasey*, 538 F.3d 1057 (9th Cir. 2008), holding that under this clause of § 321(a) "a petitioner must not only establish permanent residence, but also demonstrate that he was residing in some lawful status." *Id*. at 1062.[1]  Because Arias did not acquire such lawful status until 2001, when he was 19 years old, he did not begin to reside permanently in the U.S. "while under the age of eighteen years." 8 U.S.C. § 1432(a)(5) (1999 ed.).  The BIA therefore properly affirmed the IJ's denial of Arias's motion to terminate his removal proceedings.

2.  Arias also challenges the denial of his request for deferral of removal under the Torture Convention.  To establish his eligibility for such relief, Arias had to show that he "is more likely than not to be tortured" if removed to Guatemala. 8 C.F.R. § 1208.17(a).  Arias argues that that his non-gang-related tattoos and his criminal record would cause the Guatemalan police to wrongly assume that he was a gang member and that, for similar reasons, he would become a target of Guatemalan gangs or anti-gang vigilantes.  The BIA properly upheld the IJ's conclusion that Arias had failed to show that deferral was warranted on this theory.

---

[1] Arias urges us to follow *Nwozuzu v. Holder*, 726 F.3d 323 (2d Cir. 2013), in which the Second Circuit rejected our decision in *Romero-Ruiz* on the ground that we had given insufficient attention to the legislative history of § 321. *Id.* at 328 n.5.  We are bound by *Romero-Ruiz*. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc).

The BIA agreed that the documentary evidence submitted by Arias to the IJ indicated that there was mistreatment of persons with "gang-style tattoos," but the BIA noted that Arias did not have any such tattoos. Although there are some statements in the documentary evidence that might have supported a competing inference that *any* unfamiliar tattoo might be perceived as gang-related, the record does not compel that inference. *See Andrade v. Lynch*, 798 F.3d 1242, 1245 (9th Cir. 2015). The BIA likewise properly rejected Arias's contention that his criminal record would lead the Guatemalan police to assume that he was a gang member and to torture him. The BIA acknowledged that Arias's evidence on this score supported an inference that the police might sometimes detain or harass returning deportees based on speculation and profiling. But reviewing the record evidence as a whole, the BIA concluded that the IJ did not clearly err in finding no clear probability that Arias would "be tortured upon return to Guatemala." We cannot say that the evidence compelled a contrary conclusion to that of the agency. *Andrade*, 798 F.3d at 1245.

**PETITION DENIED.**