**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

NIRMAL SINGH; KULWANT KAUR;
SANJOT SINGH,
                    *Petitioners,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 06-74547

Agency Nos.
A072-172-796
A077-431-973
A077-431-974

KULWANT KAUR; SANJOT SINGH,
                    *Petitioners,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 07-71289

Agency Nos.
A077-431-973
A077-431-974

AMENDED
OPINION

On Petitions for Review of Orders of the
Board of Immigration Appeals

Submitted January 12, 2011*
San Francisco, California

Filed March 25, 2011
Amended June 8, 2011

---

*The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

7473

Before: Alex Kozinski, Chief Judge, John T. Noonan and Barry G. Silverman, Circuit Judges.

Opinion by Chief Judge Kozinski;
Partial Concurrence and Partial Dissent by Judge Noonan

## COUNSEL

Sabey Abraham, Hardeep S. Rai and Rebecca Rudzianis, Rai & Associates, P.C., San Francisco, California, for the petitioners.

Peter D. Keisler, Assistant Attorney General, Civil Division; Gregory G. Katsas, Acting Assistant Attorney General, Civil Division; Michelle G. Latour, Assistant Director, Lisa M. Arnold, Senior Litigation Counsel, Luis E. Perez, Tracie N. Jones and Schwanda Rountree, Of Counsel, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for the respondent.

## OPINION

KOZINSKI, Chief Judge:

We consider whether lying to the immigration authorities is a sufficient basis for an adverse credibility finding, and when a lie uttered by one spouse may fairly be attributed to the other.

### Facts

Nirmal Singh filed an asylum application soon after he came to the United States in 1994. He claimed that he had been persecuted in India because of his support for the Akali Dal Mann Party. Singh testified that he was arrested and severely beaten three times for his political activities, and that

he believed the police murdered his brother for participating in a political protest. The asylum officer disbelieved Singh and referred his application to an immigration judge for adjudication in removal proceedings.

A few months later, Singh's wife Kulwant Kaur flew to the United States with their son. Singh picked them up at the airport and brought them to his home in San Jose. After they settled in, Kaur also applied for asylum. Someone apparently advised her that she couldn't be granted asylum if she said she was living with her husband, so she lied on her application form. She claimed that Singh was not in the United States and that she had no information as to his whereabouts. She also falsely indicated that Singh had never applied for asylum.

Kaur's interview went better than Singh's. She told the asylum officer that she had been arrested and raped because of her political activities in India. She again lied under oath about not knowing the whereabouts of her husband, and submitted an affidavit from Singh's father also claiming that he didn't know where his son was. And, of course, Kaur didn't mention that Singh had been denied asylum. The asylum officer believed Kaur and granted her application.

This gave Singh a second bite at the apple. He told the immigration judge in his own case that he planned to withdraw his asylum application. Rather than fighting the asylum officer's decision, Singh would join his wife's successful application. With Singh present in the courtroom, his lawyer falsely assured the IJ that the couple had only recently found each other here. Their cases were later consolidated.

But the government was suspicious, and the asylum officer re-interviewed Kaur with her husband present. Comparing Kaur's story to Singh's, the officer noted that Kaur hadn't previously mentioned that the police in India had murdered her brother-in-law (Singh's brother). Nor did the affidavit Kaur submitted from her father-in-law mention that his own

son had been killed. This omission was remarkable because Singh had relied on the alleged killing to prove political persecution against his family. Kaur also gave conflicting dates for when Singh supposedly joined the Akali Dal Mann Party, and different details than her husband about whom he contacted before leaving India. And she continued to lie about when she had found Singh in the United States. Singh was present and spoke to the asylum officer, but said nothing to contradict his wife. The government terminated Kaur's asylum status, effective the day after the interview.

When petitioners both went before the immigration judge, Kaur finally admitted that she had lied on her application and twice lied to the asylum officer. The government pressed Singh on his lawyer's false representation that the couple had only recently discovered one another in the United States. Singh claimed he gave the lawyer accurate information about their situation, but the lawyer lied to the court anyway. And Kaur claimed the lawyer advised her to lie to the asylum officer. The IJ gave the couple an opportunity to call the lawyer, but they declined. They have never argued that they received ineffective assistance of counsel.

The IJ made an express adverse credibility finding against both Kaur and Singh, and on that basis denied their claims for relief. *See Farah* v. *Ashcroft*, 348 F.3d 1153, 1156-57 (9th Cir. 2003). Kaur later received an I-140 visa and requested that the Board of Immigration Appeals reopen her case to consider her application for adjustment of status. The BIA denied the motion.

## Analysis

Immigration judges are in the best position to evaluate the credibility of an alien applying for relief. *Mendoza Manimbao* v. *Ashcroft*, 329 F.3d 655, 661 (9th Cir. 2003). We review adverse credibility findings for substantial evidence, and must uphold them unless the evidence *compels* a contrary result.

*Balam-Chuc* v. *Mukasey*, 547 F.3d 1044, 1048 (9th Cir. 2008).

## I.  Kaur (the wife)

**[1]** Kaur admits that she lied repeatedly to avoid being denied relief, and to prevent her husband from being sent back to India. We've seen this kind of behavior before, and not with favor. In *Kaur* v. *Gonzales*, 418 F.3d 1061 (9th Cir. 2005), the asylum applicant "admitted in her testimony that she lied about her marital status in order to ensure the possibility that her husband could file an asylum application in the event hers was denied." *Id.* at 1066. We held that intentional deception toward the immigration authorities is "culpable conduct" and one of several "indications of dishonesty" that "cast[s] doubt on [the applicant]'s entire story." *Id.* at 1066-67.

**[2]** Kaur argued to the BIA that the IJ erred by making an adverse credibility finding based on nothing more than "trivial errors" and "minor inconsistencies" that revealed nothing about whether she reasonably feared returning to India. *See Osorio* v. *INS*, 99 F.3d 928, 931 (9th Cir. 1996). It's true that an adverse credibility finding must be based on more than an innocent mistake, but "[t]he concern underlying each of our decisions in this arena has been to avoid premising an adverse credibility finding on an applicant's *failure to remember* non-material, trivial details . . . ." *Kaur*, 418 F.3d at 1064 (emphasis added); *see also Marcos* v. *Gonzales*, 410 F.3d 1112, 1117 (9th Cir. 2005) (explaining when "discrepancies" and "inconsistencies" count against applicant). An applicant will naturally be more likely to remember and relate the facts that are important to his claim. The IJ therefore shouldn't infer from an applicant's careless error about peripheral details that he's lying about the facts that do matter.

**[3]** But the rule is quite different when it comes to deliberate deception. *See Liu* v. *Holder*, No. 08-72849, 2011 WL

635276, at *6 (9th Cir. Feb. 23, 2011) (distinguishing deliberate fabrications from omissions, inconsistencies and discrepancies). An asylum applicant who lies to immigration authorities casts doubt on his credibility and the rest of his story. There are strictly limited instances when we overlook an alien's decision to mislead immigration officials: In *Akinmade* v. *INS*, 196 F.3d 951 (9th Cir. 1999), we recognized that "a genuine refugee escaping persecution may lie about his citizenship to immigration officials in order to flee his place of persecution or secure entry into the United States." *Id.* at 955; *see also Marcos*, 410 F.3d at 1117-18 & n.4. *That* kind of lie can't count against him. But the deception here was completely unrelated to escaping immediate danger or gaining entry into the United States. Kaur admits that she made a conscious decision to lie to the asylum office about a fact she believed was crucial to her claim for permanent relief. It doesn't matter that the fact turned out to be irrelevant. What matters is that the petitioner chose to lie to immigration authorities. That always counts as substantial evidence supporting an adverse credibility finding, unless the lie falls within the narrow *Akinmade* exception.

**[4]** For similar reasons, the BIA did not abuse its discretion in denying Kaur's motion to reopen for adjustment of status. *See INS* v. *Abudu*, 485 U.S. 94, 105 (1988). It reasonably concluded that Kaur's "history of misrepresentations . . . is a serious adverse factor that is not outweighed by her positive equities."

## II.   Singh (the husband)

Singh tried to piggyback on his wife's deception. His lawyer told the same fairy tale about how husband and wife had lost track of each other and then met by accident in the United States. Singh claims he didn't know what his lawyer was saying, but he was present and understands English. The IJ didn't have to believe Singh. *See Rivera* v. *Mukasey*, 508 F.3d 1271, 1275 (9th Cir. 2007). Instead, she could reasonably infer that

Singh heard and understood what his lawyer said, and remained silent because he had given the lawyer the false information or was content to have the lawyer lie on his behalf.

**[5]** Singh again said nothing when his wife lied during her second interview with the asylum officer. Nor did he contradict her false testimony when the asylum officer questioned him. Singh blamed antidepressant medication, but the IJ didn't have to buy this excuse either. Singh and Kaur are husband and wife, living under the same roof; they had a common interest in the success of Kaur's asylum application: If Kaur could retain her favorable asylum ruling, they would both be able to remain in the United States. *See* 8 U.S.C. § 1158(b)(3); 8 C.F.R. § 1208.21. There are some circumstances in which it would be unreasonable for an IJ to discredit an applicant for failing to correct his wife's lies. For example, it would be unfair if the applicant didn't know his wife was lying, had no opportunity to speak or was pressured into keeping his mouth shut. But there was no evidence that anything like that had happened here. The IJ could therefore reasonably infer that the couple had discussed the asylum reinterview ahead of time and jointly decided to stick with Kaur's false story rather than come clean. Singh claims he can't be held responsible for Kaur's lies because the asylum officer didn't ask him whether he agreed with his wife's account, but "[t]he maxim of the law is 'Silence gives consent.' " Robert Bolt, *A Man for All Seasons* 152 (Vintage Books 1990) (stage direction omitted); *cf. United States* v. *Schaff*, 948 F.2d 501, 505 (9th Cir. 1991) (discussing adoptive admissions). It doesn't matter which spouse told the lie and which one tacitly assented: The IJ reasonably concluded that Kaur and Singh were executing a common plan to deceive the asylum officer, and reasonably disbelieved both of them.

\* \* \*

**[6]** By necessity, much of the immigration system depends on aliens telling the truth when they seek relief. When appli-

cants deliberately lie, as Singh and Kaur did here, that trust is broken and it's entirely reasonable for the immigration authorities to disbelieve their stories and deny their claims. The REAL ID Act has given immigration judges even broader discretion in making their credibility determinations, but they've always been permitted to use their common sense. *See Kaur*, 418 F.3d at 1066. Discovering that Kaur and Singh knowingly deceived our government for years was a perfectly good reason not to believe their testimony, and we cannot conclude that the evidence compels a contrary finding.

**PETITIONS FOR REVIEW DENIED.**

---

NOONAN, Circuit Judge, concurring in part and dissenting in part:

I concur in the majority's denial of Kulwant Kaur's petition. Kaur admitted to the Immigration Judge that she lied. It is often impossible for asylum seekers to obtain documentary evidence. The integrity of our asylum system depends on asylum seekers' truthfulness. It is not an abuse of discretion for the Board of Immigration Appeals to refuse to reopen Kaur's case.

I do not join in the majority's denial of Nirmal Singh's petition — a denial of asylum to a husband because he did not stand up and expose the lies of his wife. The unity of husband and wife in today's America is not so close that a wife speaks for a husband, nor that a husband adopts his wife's words.

The record depicts Singh as a frightened and depressed man who unwittingly put his life in the hands of an unscrupulous attorney. The Indian police thrice arrested and tortured Singh. They killed Singh's brother in a "false encounter" after the two brothers were arrested together during a protest. In his third arrest, the police beat him unconscious. Singh fled India.

Singh hired Randhir Kang to represent him in his asylum application filed shortly after his arrival in the United States. Kang has since been disbarred from practice in the immigration courts and this court based on his unethical and grossly inadequate representation of clients. *In re Kang*, D2005-184 (BIA April 11, 2006); *In re Randhir S. Kang, Esq.*, No. 04-80059 (9th Cir. Nov. 28, 2005).

The Immigration Judge issued a single oral opinion covering both Singh and Kaur. The Immigration Judge found that the couple's claims, "if credible, would form the basis for a grant of asylum," but she denied both applications based on a single adverse credibility finding: "respondents' testimony has been proven to be false and has been consciously incorrect."

The majority holds that the Immigration Judge legitimately based her adverse credibility finding against Singh on statements made by Kaur. In *Oliver Twist*, when Mr. Bumble is informed that "the law supposes that your wife acts under your discretion," he replies, "If that's the eye of the law, the law is a bachelor; and the worst I wish the law is that his eye may be opened by experience — by experience." Experience in America establishes that a marital union does not dissolve the identities of the two spouses.