**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| DANIEL TOCHUKWU ANI, | No. 24-2339 |
| *Petitioner*, | Agency No. A096-819-136 |
| v. | |
| PAMELA BONDI, Attorney General, | OPINION |
| *Respondent*. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted May 16, 2025
San Francisco, California

Filed October 16, 2025

Before: Milan D. Smith, Jr. and Daniel A. Bress, Circuit
Judges, and Brian M. Morris, Chief District Judge.[*]

Opinion by Judge Bress

---

[*] The Honorable Brian M. Morris, United States Chief District Judge for
the District of Montana, sitting by designation.

# SUMMARY[**]

## Immigration

The panel denied Daniel Ani's petition for review of the Board of Immigration Appeals' decision denying asylum and related relief on adverse credibility grounds.

The panel considered the interaction of *Alam v. Garland*, 11 F.4th 1133 (9th Cir. 2021) (en banc), with longstanding case law permitting an immigration judge to find an asylum applicant not credible based on the applicant's material and conscious deception of immigration authorities, even when the deception is not central to the basis for the asylum claim. In *Alam*, the court interpreted the Real ID Act of 2005 to mean that there is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination. Rather, the court's review requires assessing the totality of the circumstances. The panel concluded that this court's jurisprudence regarding the maxim *falsus in uno, falsus in omnibus*—false in one thing, false in everything—survived both the REAL ID Act and the en banc court's decision in *Alam*.

The panel held that substantial evidence supported the immigration judge's adverse credibility determination, which was founded on Ani having committed marriage fraud to secure immigration status. Although that fraud did not directly relate to Ani's account of persecution, it provided a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

sufficient basis in this case for the immigration judge to find him not credible and thus deny his application for relief.

## COUNSEL

Emmanuel E. Enyinwa (argued), Law Office of Emmanuel Enyinwa, San Francisco, California, for Petitioner.

Aaron Henricks (argued), Counsel to the Deputy Attorney General; Sarah A. Byrd, Trial Attorney; Jennifer Levings, Assistant Director; Office of Immigration Litigation; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

BRESS, Circuit Judge:

We have long held that when an asylum applicant has lied to immigration authorities, an immigration judge can find the applicant not credible, even when the falsehood is not directly related to the basis for the asylum claim. In *Alam v. Garland*, 11 F.4th 1133, 1137 (9th Cir. 2021) (en banc), we interpreted the Real ID Act of 2005 to mean that "[t]here is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination." Rather, our review of an adverse credibility finding "will always require assessing the totality of the circumstances." *Id.*

We consider here the interaction of *Alam*'s rule of decision with our longstanding case law permitting an immigration judge to find an asylum applicant not credible based on the applicant's material and conscious deception of immigration authorities, even when the deception is not central to the basis for the asylum claim. In this case, we hold that substantial evidence supports the immigration judge's adverse credibility determination, which was founded on the petitioner committing marriage fraud to secure immigration status. Although that fraud did not directly relate to the petitioner's account of persecution, it provided a sufficient basis for the immigration judge to find petitioner not credible.

We deny the petition for review.

# I

## A

The immigration judge (IJ) found the petitioner, Daniel Tochukwu Ani, not credible. Nevertheless, Ani's account of events is as follows.

Ani is a native and citizen of Nigeria. In Nigeria, he was a member of a separatist political organization, Movement for the Actualization of the Sovereign State of Biafra (MASSOB), described as "a non-violent organization that advocates for the formation of a separate state called Biafra in the Eastern part of Nigeria." Ani joined MASSOB in 2000, after his father died. His father was a senator and member of MASSOB, and Ani participated in MASSOB meetings and supported the organization financially.

In removal proceedings, Ani testified to several violent incidents perpetrated by Nigerian police. In February or March 2001, armed men came to his house late at night. Ani heard them ask, "Where is that MASSOB guy?" Ani fled to a neighbor's house. Following this episode, Ani stopped hosting MASSOB meetings in his home but continued to attend meetings at MASSOB's headquarters.

In January 2002, Ani was attending a MASSOB meeting when thirty armed men surrounded the building. Some MASSOB members who tried to escape were killed, and other attendees, including Ani, were arrested. Ani was held for ten days. During his detention, the attackers made him take off his clothes and they penetrated his anus with a stick.

Ani further testified that in 2003, he was traveling to a MASSOB meeting on a bus with other MASSOB members when the police stopped his bus and other buses heading to the meeting. The police demanded that the MASSOB

members get off the bus, at which point some people started to run. The police shot and killed around forty of them. Ani and others escaped by hiding in bushes for more than two hours.

Ani also testified that in May or June of 2004, the police interrupted a MASSOB meeting that he was attending. The police told the MASSOB members that they were under arrest because they were attending an illegal meeting. Ani was able to escape unharmed.

In November 2004, Ani was driving home from a MASSOB meeting when a car forced him to pull over. Four armed men put Ani in the trunk of their car. The men held Ani in a cage for a day and planned to kill him until their boss intervened. Ani testified that because his brother had previously given the boss money, the boss let Ani go free. After this incident, Ani decided to leave Nigeria until it was safe to return.

In September 2005, Ani enrolled in a master's program at London Metropolitan University. After completing his first semester, Ani came to the United States in December 2005 for his niece's christening, securing a six-month visitor visa. In February 2006, while still in the United States, Ani met L.B. at a friend's house. According to Ani, L.B. proposed to him in April. In May 2006, they married.

## B

Ani applied for adjustment of status to lawful permanent resident based on his marriage to L.B. But indications emerged that the marriage was a sham. In an interview with U.S. Citizenship and Immigration Services (USCIS), L.B. told the USCIS officer, Rebecca Cataldo, that Ani had paid her $6,000 to marry him and that she had agreed to marry

Ani for immigration purposes. Ani also filled out and signed a sworn affidavit witnessed by Cataldo, in which Ani admitted to marriage fraud. Ani's affidavit stated: "[S]he agreed to help me and we got married. . . . She agreed to marry me for money, that is if I paid her. We agreed on $7,000. She has collected up to $6,000. . . . We have not had sex." Ani's statement also indicated that it was given "freely and voluntarily."

In March 2007, USCIS denied Ani's application for adjustment of status. Soon thereafter, the Department of Homeland Security (DHS) initiated removal proceedings against Ani. In the Notice to Appear, DHS charged Ani with removability as an alien who overstayed his visa under 8 U.S.C. § 1227(a)(1)(B) and who committed marriage fraud under 8 U.S.C. § 1227(a)(1)(G)(ii).

In late 2007, Ani filed with USCIS a request for a visa as a battered spouse under the Violence Against Women Act (VAWA). That request, if approved, would have allowed him to apply for adjustment of status on this basis. 8 U.S.C. § 1255(a). In October 2009, USCIS denied the VAWA petition, finding that Ani failed to establish that he resided with L.B. and that he entered into a good-faith marriage with L.B.

Ani appealed the denial of his VAWA petition, but the USCIS Administrative Appeals Office dismissed the appeal in April 2010, agreeing that Ani did not demonstrate either joint residence or a good-faith marriage. The Appeals Office's "independent review of the record" demonstrated that Ani's marriage to L.B. "was entered into for the purpose of evading the immigration laws," citing among other things Ani's "sworn, willful[,] and voluntary admission that his marriage to [L.B.] was fraudulent." This decision also cited

the "numerous inconsistencies and deficiencies regarding the petitioner and [L.B.'s] claimed joint residence."

C

In August 2010, Ani's brother sent him a news article from a Nigerian newspaper (Vanguard) that referenced the May or June 2004 incident when Ani had escaped from the police. The article identified Ani by name as having "allegedly escaped" in 2004. In November 2010, Ani filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Before the IJ, Ani testified that he is a member of the Igbo ethnic group and MASSOB. Ani also testified at length that his marriage to L.B. was valid (though they had since divorced), that the two were romantically involved, and that he did not commit marriage fraud.

Addressing his signed statement in which he admitted to marriage fraud, Ani claimed he signed it under duress after Cataldo, the USCIS officer, threatened him with immediate detention and deportation if he did not sign. According to Ani, Cataldo "told him that he could either admit to the accusations and be released to find a lawyer or face detention and removal." In a sworn affidavit, Cataldo rejected these accusations, stating: "I have never threatened an alien with arrest by one of the armed guards." Although she had "no independent memory" of Ani's case, Cataldo recognized her "signature on the sworn statements as witness to the confessions of [Ani and his] prior spouse concerning their marriage fraud."

The IJ denied Ani's application for asylum, withholding of removal, and CAT relief. The IJ first found Ani not credible based on his marriage fraud and his testimony

regarding his marriage. The IJ acknowledged that "[r]egarding much of his asylum claim, [Ani] testified in a believable and forthright manner, and his testimony was largely consistent throughout direct and cross-examination." However, the IJ could not "ignore evidence that [Ani] previously attempted to circumvent the immigration system through marriage fraud." The IJ found the USCIS decision to be "well-reasoned" and "persuasive evidence that [Ani] committed marriage fraud." And "[t]he fact that [Ani] continued to misrepresent the nature of his marriage to [L.B.] throughout these proceedings further increases the Court's skepticism about the validity of [his] asylum claim."

As the IJ explained, "that [Ani] previously deceived immigration officials cuts against his credibility in the current matter." Relying on *Singh v. Holder*, 643 F.3d 1178 (9th Cir. 2011), the IJ reasoned that "intentional deception of immigration authorities is an indication of dishonesty that casts doubt on the applicant's entire story," even if "the deception was not central to [the] asylum claim." Although Ani's marriage fraud was "unrelated to the substance of his asylum claim," his "willingness to lie to immigration officials to gain an immigration benefit makes the Court question his overall credibility."

The IJ further grounded her adverse credibility determination in Ani's testimony before the IJ about his marriage to L.B. The IJ was "troubled by [Ani's] in-court testimony regarding his marriage to [L.B.] because it conflicts with his previous statement to USCIS." Though Ani denied marriage fraud before the IJ, this testimony "directly conflict[ed] with [Ani's] sworn statement about the marriage that he submitted to USCIS." Although Ani's testimony about past persecution in Nigeria was internally consistent, so was his account of his marriage to L.B.—until

"outside documentation" such as his signed statement confirmed that his testimony was inaccurate.

The IJ rejected as "unconvincing" Ani's explanation that he signed the statement admitting to marriage fraud because USCIS officer Cataldo coerced him to sign. The IJ credited Cataldo's statement that she had never threatened an applicant in this way. The IJ also found Ani's story of coercion implausible because it was unlikely that Cataldo had threatened Ani with detention when she lacked that authority, and because Cataldo did not need Ani's sworn statement when she already had L.B.'s admission of marriage fraud.

After finding Ani not credible, the IJ then considered whether other evidence in the record, besides Ani's discredited testimony, provided a basis for relief. The IJ found that Ani's asylum claim was not untimely because the August 2010 Vanguard article mentioning him in connection with MASSOB constituted changed circumstances. *See* 8 U.S.C. § 1158(a)(2)(D). However, on the merits, Ani was ineligible for asylum and withholding of removal. The 2010 news article substantiated Ani's claim that he was almost arrested in 2004, but there was no evidence of physical injury from the incident. Thus, Ani did not establish past persecution. As to a well-founded fear of future persecution, the IJ first concluded that because Ani was not credible, he "has not established that he has a subjective fear of returning to Nigeria." But even assuming Ani established a subjective fear, "the evidence in the record is insufficient to establish that he has an objectively reasonable fear of persecution." Regarding Ani's CAT claim, the IJ found that there was no evidence of past torture or a particularized risk of future torture.

### D

Ani appealed to the BIA, which affirmed in part but remanded to the IJ for further proceedings on Ani's fear of future persecution. The BIA first found no clear error in the IJ's adverse credibility determination because Ani committed marriage fraud and "his explanations for this . . . were not adequately supported by the evidence." The BIA concluded that the IJ "was permitted to draw a negative inference as to [Ani's] credibility" based on the marriage fraud, "despite the fact that it has no direct relation to the facts underlying his claim." The BIA next agreed with the IJ that without credible testimony, Ani did not establish past persecution.

However, the BIA concluded that "the record contains evidence that [Ani] is a supporter of the MASSOB, and that in Nigeria, such supporters bear some risk of harm given the evidence of the government's occasionally aggressive opposition to the stated goals of the organization." Thus, the BIA remanded for further analysis of Ani's asserted fear of future persecution.

On remand, Ani submitted additional documents regarding his fear of future harm, but the IJ again denied his applications for asylum, withholding of removal, and protection under CAT. Because the BIA affirmed the IJ's previous adverse credibility and past persecution determinations, the IJ incorporated the analysis on those issues from the prior IJ decision.

Regarding a well-founded fear of future persecution, the IJ first found that "the documentary evidence does not corroborate [Ani's] testimony regarding his individualized fear of future persecution." Thus, Ani did not establish a subjective fear of future persecution. Here the IJ again

analyzed the 2010 Vanguard article, explaining that it is speculative whether anyone in the Nigerian government would still be pursuing someone who attended a MASSOB meeting in 2004. The IJ next found that Ani did not demonstrate an objectively reasonable fear of future persecution.

The IJ also concluded that even assuming Ani was eligible for asylum, the IJ would deny his application as a matter of discretion, largely due to his immigration fraud. And because Ani failed to demonstrate a well-founded fear of persecution for purposes of asylum, he necessarily failed to make the greater showing required for withholding of removal. Lastly, the IJ determined that Ani was ineligible for protection under CAT because he did not establish that he would more likely than not be tortured in Nigeria.

Ani again appealed to the BIA. This time, the BIA dismissed Ani's appeal in full. The BIA first found that Ani failed to meaningfully challenge the IJ's denial of his claim for CAT relief and thus deemed Ani's CAT claim waived. The BIA then rejected Ani's challenge to the IJ's adverse credibility determination, citing the BIA's previous decision. The BIA further agreed that absent credible testimony, Ani had not established an objectively reasonable fear of future persecution. According to the BIA, the IJ did not err in giving limited weight to new articles because they either concerned events from decades ago or because they discussed Ani's father, not Ani. The BIA likewise affirmed the IJ's denial of withholding of removal.

Finally, the BIA denied Ani's motion to remand. In support of his motion, Ani submitted news articles about the arrest and extradition to Nigeria of a prominent leader of a separatist organization. The BIA found this evidence

insufficiently material because Ani did not explain how the treatment of this "charismatic leader" establishes that Ani had an objectively reasonable fear of future persecution.

Ani now petitions for review. We have jurisdiction under 8 U.S.C. § 1252.

## II

We review denials of asylum, withholding of removal, and CAT relief for substantial evidence. *Sharma v. Garland*, 9 F.4th 1052, 1060, 1066 (9th Cir. 2021). We also review adverse credibility determinations for substantial evidence. *Ruiz-Colmenares v. Garland*, 25 F.4th 742, 748 (9th Cir. 2022). "Under the substantial evidence standard, administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* (quoting *Zehatye v. Gonzales*, 453 F.3d 1182, 1185 (9th Cir. 2006)). We review the BIA's denial of a motion to remand for abuse of discretion. *Taggar v. Holder*, 736 F.3d 886, 889 (9th Cir. 2013). When the BIA agrees with the IJ's decision, we consider both decisions. *Garcia-Martinez v. Sessions*, 886 F.3d 1291, 1293 (9th Cir. 2018).

## A

The IJ denied Ani asylum and withholding of removal after first finding him not credible. The IJ's adverse credibility finding was based largely on Ani lying to immigration authorities about his marriage to L.B. That fraud was not germane to Ani's claim for asylum, which concerned his asserted past persecution and fear of future persecution in Nigeria due to his ethnicity and membership in MASSOB. To explain why substantial evidence supports

the IJ's adverse credibility determination, we must address several strands of our case law in this area.

The REAL ID Act of 2005 created new standards for adverse credibility determinations. *See Ruiz-Colmenares*, 25 F.4th at 749. The statute provides:

> Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, the inherent plausibility of the applicant's or witness's account, the consistency between the applicant's or witness's written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, the consistency of such statements with other evidence of record (including the reports of the Department of State on country conditions), and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor. There is no presumption of credibility, however, if no adverse credibility determination is explicitly made, the applicant or witness shall have a

rebuttable presumption of credibility on appeal.

8 U.S.C. § 1158(b)(1)(B)(iii). This standard "gives wide latitude to the trier of fact in making credibility determinations, considering the totality of circumstances and all relevant factors." *Ruiz-Colmenares*, 25 F.4th at 749.

Prior to the REAL ID Act, under our circuit's case law "the outcome of a petitioner's challenge to the agency's adverse credibility finding depended entirely on whether the agency had cited at least one valid, individual ground going to the heart of the claim." *Alam*, 11 F.4th at 1135. But as evident from the statutory language, "[t]he REAL ID Act eliminated the 'heart of the claim' requirement." *Id.* Nevertheless, following the enactment of the REAL ID Act, we had retained our pre-REAL ID Act case law holding that courts must uphold adverse credibility determinations if "substantial evidence supports a single factor in the adverse credibility analysis." *Id.* at 1136.

Our en banc decision in *Alam* overruled this "single factor" rule. *Id*. at 1134. Now "[t]here is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination." *Id.* at 1137. Rather, our "review will always require assessing the totality of the circumstances" to determine whether an IJ's credibility finding is supported by substantial evidence. *Id.*

Of course, even under the REAL ID Act, "an utterly trivial inconsistency, such as a typographical error, will not by itself form a sufficient basis for an adverse credibility determination." *Shrestha v. Holder*, 590 F.3d 1034, 1043 (9th Cir. 2010). And "an applicant's careless error about

peripheral details" does not support an inference that the applicant is "lying about the facts that do matter." *Singh*, 643 F.3d at 1180–81. At the same time, an inconsistency need not be "material in the sense of important to the petitioner's well-founded fear of persecution," because "such a requirement would contradict the REAL ID Act's plain text." *Shrestha*, 590 F.3d at 1043 n.4. Indeed, "even minor inconsistencies that have a bearing on a petitioner's veracity may constitute the basis for an adverse credibility determination." *Li v. Garland*, 13 F.4th 954, 959 (9th Cir. 2021) (quoting *Ren v. Holder*, 648 F.3d 1079, 1089 (9th Cir. 2011)).

Both prior to the REAL ID Act and after its enactment, our cases have allowed IJs to make adverse credibility determinations based on the maxim *falsus in uno, falsus in omnibus*—false in one thing, false in everything. *See, e.g.*, *Singh v. Garland*, 124 F.4th 690, 697 (9th Cir. 2024); *Li v. Holder*, 738 F.3d 1160, 1163 (9th Cir. 2013)). As one of our cases explains it, "[o]ur law has long recognized that a person who is deemed unbelievable as to one material fact may be disbelieved in all other respects." *Lopez-Umanzor v. Gonzales*, 405 F.3d 1049, 1059 (9th Cir. 2005). This principle extends to immigration cases. We have thus "granted IJs the power to invoke the *falsus* maxim," allowing them to "discredit an alien's 'entire testimony' in removal proceedings if the alien 'makes a *material* and *conscious* falsehood in one aspect of his testimony.'" *Singh*, 124 F.4th at 697 (quoting *Li*, 738 F.3d at 1163 (emphasis in original)); *see also Yang v. Lynch*, 822 F.3d 504, 508 (9th Cir. 2016) ("Under this court's precedent, an immigration judge may apply the *falsus* maxim to find that a witness who testified falsely about one thing is also not credible about other things."); *Li*, 738 F.3d at 1163 ("The law of this circuit

permits the use of the maxim *falsus in uno, falsus in omnibus* in the immigration context.").

*Li*, a pre-REAL ID Act case, is representative. In that case, Li claimed she feared persecution in China based on her religion and because she was forced to have an abortion under China's population control measures. *Li*, 738 F.3d at 1162. The IJ found that Li was not credible with respect to her religious persecution claim. *Id.* at 1163. Because of this, the IJ found her entire testimony not credible, including as to her forced abortion claim. *Id.*

In upholding the IJ's adverse credibility determination, we rejected Li's argument that the BIA could not discredit her testimony concerning her abortion just because it disbelieved her account of religious persecution. *Id.* Citing *falsus in uno, falsus in omnibus*, we concluded that "if the witness makes a *material* and *conscious* falsehood in one aspect of his testimony," then an IJ can "disbelieve a witness's entire testimony." *Id.* (emphasis in original). We acknowledged that while Li's "inconsistencies concern material aspects of her religious persecution claim for asylum, they do not touch upon her forced abortion claim." *Id.* at 1166. But the *falsus* maxim is premised on the logic that "if a person testifies falsely, willfully, and materially on one matter, then his 'oath' or word is not 'worth anything' and he is likely to be lying in other respects." *Id.* at 1163 (quoting *Cvitkovic v. United States*, 41 F.2d 682, 684 (9th Cir. 1930)). Because "Li is the same person who testified about both her claims[,] . . . [h]er credibility goes to the heart of either and both claims." *Id.* at 1166.

Although we did not cite the *falsus* maxim, we relied on its rationale to reach a similar conclusion in a pair of pre-REAL ID Act cases involving the intentional deception of

immigration authorities: *Singh v. Holder*, 638 F.3d 1264 (9th Cir. 2011) (*Harminder Singh*), and *Singh v. Holder*, 643 F.3d 1178, 1181 (9th Cir. 2011) (*Nirmal Singh*).  In *Harminder Singh*, the petitioner submitted an application for asylum based on an account of events that he later admitted was fabricated.  638 F.3d at 1265.  Before the IJ, the petitioner then offered a different account of feared persecution.  *Id.* at 1266.  We upheld the IJ's adverse credibility finding even though "the IJ found [Harminder Singh's] testimony to be internally consistent on direct and cross and consistent with his second application for asylum."  *Id.* at 1269.  In doing so, we rejected the "proposition that testimony both internally consistent and consistent with the asylum application must be deemed credible."  *Id.* at 1270.  Instead, the IJ was permitted to disbelieve Harminder Singh's second account because he admitted he had lied in his first asylum application. *Id.* at 1272–73.  While "[a] past falsehood, even an intentional one, does not necessarily defeat credibility," an IJ at the same time "cannot be required to accept as true any internally consistent story from the asylum seeker."  *Id.* at 1273.

We upheld an IJ's adverse credibility determination under similar circumstances in *Nirmal Singh*.  *See* 643 F.3d at 1180–81.  In that case, petitioner Kaur lied in an asylum application and interview about whether she was living with her husband and if she knew his whereabouts.  *Id.* at 1179.  We upheld the IJ's adverse credibility finding because "[a]n asylum applicant who lies to immigration authorities casts doubt on his credibility and the rest of his story."  *Id.* at 1181.  Kaur "made a conscious decision to lie to the asylum office about a fact she believed was crucial to her claim for permanent relief," and "[i]t doesn't matter that the fact turned out to be irrelevant."  *Id.*

Properly considered, *Harminder Singh* and *Nirmal Singh* are cases in which the *falsus* maxim applied to the maximum. When applicants for immigration relief deliberately lie to immigration authorities to secure an immigration benefit, "it's entirely reasonable for the immigration authorities to disbelieve their stories and deny their claims." *Id.* at 1182. It is one thing for a petitioner to testify falsely before an IJ as to one aspect of his account. Although that circumstance permits the IJ to discredit the petitioner's testimony if the falsehood is material, *see Li*, 738 F.3d at 1163, it is arguably even more problematic for a petitioner to deliberately deceive immigration authorities on a sustained and calculated basis, such as through a falsified asylum application.

Although we have not directly so held, our cases recognizing and applying the *falsus* maxim in the immigration context, as well as our decisions in *Harminder Singh* and *Nirmal Singh*, survive both the REAL ID Act and our en banc decision in *Alam. Cf. Shrestha*, 590 F.3d at 1042 ("The REAL ID Act did not strip us of our ability to rely on the institutional tools that we have developed . . . to aid our review."). Under *Alam*, "[t]here is no bright-line rule under which some number of inconsistencies requires sustaining or rejecting an adverse credibility determination," as "our review will always require assessing the totality of the circumstances." 11 F.4th at 1137. Still, deliberate deception of immigration authorities will surely reflect an important factor in the totality of circumstances, regardless of whether the deception relates to the eventual claimed basis for asylum. If a petitioner has deliberately deceived immigration authorities in the past when seeking immigration relief, it remains a permissible inference that the petitioner may be deceiving authorities in the present

proceedings.  *See Nirmal Singh*, 643 F.3d at 1181–82; *Li*, 738 F.3d at 1163.

To be sure, the reasoning of *Alam* confirms that materially false testimony on one aspect of testimony, or a petitioner's deliberate deception of immigration authorities, does not make an IJ's adverse credibility determination on these grounds impervious to review.  But if an IJ supportably relies on those circumstances in finding a petitioner not credible, for the petitioner to prevail, his testimony and the other evidence in the record will need to compel the conclusion that the adverse credibility finding is either infirm or an inadequate basis for denying relief.  And petitioner's otherwise "internally consistent" testimony, standing alone, will not be sufficient to overcome an adverse credibility determination.  *See Harminder Singh*, 638 F.3d at 1270.  Instead, the evidence must not only support the petitioner's entitlement to relief but override his intentional deception of immigration authorities, to the point that the record compels us to disregard the petitioner's conscious efforts to secure an immigration benefit through fraud.  Although that showing is theoretically available, the governing legal standards dictate that it will be difficult to meet.  *See Shrestha*, 590 F.3d at 1041 (noting that under the REAL ID Act, "only the most extraordinary circumstances will justify overturning an adverse credibility determination") (quoting *Jibril v. Gonzales*, 423 F.3d 1129, 1138 n.1 (9th Cir. 2005)).  Indeed, Ani identifies no case in which we have rejected an adverse credibility determination based on a petitioner's intentional deception of immigration authorities.

Our decision in *Nirmal Singh* stated that a "conscious decision to lie to the asylum office" about a fact that the petitioner deems crucial will "always counts as substantial

evidence supporting an adverse credibility finding." 643 F.3d at 1181. If taken literally, that statement could suggest tension with *Alam*. *See Alam*, 11 F.4th at 1138 (Bennett, J., concurring). But we do not take the "always" language in *Nirmal Singh* to mean anything more than "always," in the absence of evidence compelling a contrary conclusion. That explains why we went on to explain in *Nirmal Singh* that Kaur "knowingly deceiv[ing] our government for years was a perfectly good reason" for the IJ to find her not credible, "*and we cannot conclude that the evidence compels a contrary finding*." 643 F.3d at 1182 (emphasis added). That reasoning would make little sense if "always" meant "always no matter what."

In sum, after the REAL ID Act, the *falsus* maxim still allows IJs to make adverse credibility findings based on material falsehoods, even when they are not central to the basis for the present claim for immigration relief. *Li*, 738 F.3d at 1168. A particularly concerning category of intentional falsehoods involves "deliberate deception" of immigration authorities. *Nirmal Singh*, 643 F.3d at 1181. Such deception standing alone can support an adverse credibility finding under the totality of the circumstances, even if the deception is not directly relevant to an underlying claim for relief. *Id.* Although these findings do not automatically require courts to uphold the adverse credibility determination, *see Alam*, 11 F.4th at 1137; *Harminder Singh*, 638 F.3d at 1273, evidence that compels a contrary conclusion will need to be so strong as to overcome the inherent credibility concerns associated with any petitioner who deliberately deceives immigration authorities to gain an immigration benefit.

B

Turning back to Ani's case, we have little difficulty concluding that substantial evidence supports the IJ's adverse credibility determination and denial of relief.

The record supports the conclusion that Ani lied to immigration authorities about his marriage to L.B. in attempting to secure immigration status through her. There were significant inconsistencies concerning Ani's account of his cohabitation with L.B., as set forth in the USCIS decision on which the IJ and BIA permissibly relied. L.B. also admitted the marriage was fraudulent and so did Ani, in a written statement no less, which represented that it was made "freely and voluntarily." The IJ was well within her discretion in rejecting Ani's unsupported assertion that he signed this statement because he was coerced by Cataldo. And the IJ could further doubt Ani's credibility after he continued to maintain before the IJ that his marriage to L.B. was legitimate, testimony that "directly conflict[ed] with [Ani's] sworn statement about the marriage that he submitted to USCIS."

As in *Nirmal Singh*, Ani's "intentional deception toward the immigration authorities" supported an adverse credibility determination even though Ani's marriage fraud was "irrelevant" to his substantive claim for asylum. 643 F.3d at 1180–81. And Ani's continued denial of marriage fraud before the IJ raised legitimate questions about his ability to testify honestly.

Ani's intentional effort to defraud immigration authorities was also hardly a trivial matter. *See Shrestha*, 590 F.3d at 1043. It instead reflected an orchestrated effort to secure immigration status through fraudulent means, which included paying L.B. to lie. As the IJ recounted, Ani in fact

made the "conscious choice" to pursue this fraudulent path to remaining in the United States rather than seeking asylum on the basis of political persecution or his Igbo ethnicity, which he only did years later. Ani's behavior and testimony justified the IJ in disbelieving Ani's account of persecution. The IJ was not required to credit that account in the face of extensive evidence of Ani's fraud on the immigration system. When an applicant for immigration relief has attempted to defraud immigration authorities in seeking one form of relief, an IJ can disbelieve the applicant's account when he is seeking a different form of relief.

To be sure, the BIA acknowledged Ani's "consistent testimony of past harm, his credible demeanor, and objective evidence corroborating his claim, including a newspaper article identifying him as having escaped a police attack on supporters of the MASSOB." But these circumstances do not compel the conclusion that Ani was credible. *See Harminder Singh*, 638 F.3d at 1270 ("But just because the asylum seeker does tell the story consistently, that does not establish that it is true."). "By necessity," we have explained, "much of the immigration system depends on aliens telling the truth when they seek relief." *Nirmal Singh*, 643 F.3d at 1182. But "[w]hen applicants deliberately lie," as the IJ found that Ani did here, the "trust is broken and it's entirely reasonable for the immigration authorities to disbelieve their stories and deny their claims." *Id.* That principle governs this case, and the record does not compel a contrary conclusion.

In the absence of credible testimony, substantial evidence supports the denial of asylum and withholding of removal. To establish eligibility for asylum, Ani must "demonstrate a likelihood of 'persecution or a well-founded fear of persecution on account of race, religion, nationality,

membership in a particular social group, or political opinion.'" *Sharma*, 9 F.4th at 1059 (quoting 8 U.S.C. § 1101(a)(42)(A)). To establish eligibility for withholding of removal, Ani must "prove that it is more likely than not" that he will be persecuted in Nigeria "because of" membership in a particular social group or other protected ground. *Barajas-Romero v. Lynch*, 846 F.3d 351, 357, 360 (9th Cir. 2017); *see* 8 U.S.C. § 1231(b)(3)(A). A petitioner can demonstrate that he is eligible for asylum and withholding of removal "by showing past persecution, which gives rise to a rebuttable presumption of future persecution." *Sharma*, 9 F.4th at 1060.

In this case, and without credible testimony, Ani could not show past persecution. Nor does the record otherwise compel a finding of past persecution or an objectively reasonable fear of future persecution based on Ani's Igbo ethnicity or his membership in MASSOB. *See Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc) (legal standards). Ani points to newspaper articles describing the arrests of MASSOB members, articles concerning his father, and the Vanguard News article identifying Ani as having escaped arrest in 2004. But as the IJ explained, much of this evidence is not specific to Ani, and the Vanguard article, while notable, still describes events of many years ago. These materials do not compel the conclusion that anyone in the Nigerian government would still pursue Ani. Because Ani fails to show that he is entitled to asylum, he likewise fails to meet the "more stringent"

showing for withholding of removal. *Sharma*, 9 F.4th at 1066.[1]

Finally, the BIA did not abuse its discretion in denying Ani's motion to remand this matter back to the IJ. To prevail on a motion to remand, a petitioner must, among other things, "proffer evidence that 'is material.'" *Alcarez-Rodriguez v. Garland*, 89 F.4th 754, 760 (9th Cir. 2023) (quoting 8 C.F.R. § 1003.2(c)(1)). The BIA did not abuse its discretion in finding that Ani's new evidence was not material. The news articles that Ani provided concerned the arrest and extradition to Nigeria of the separatist leader Nnamdi Kanu to face trial on charges of treason. The BIA did not abuse its discretion in concluding that alleged persecution against Kanu, "a prominent charismatic leader" of a separatist group, did not demonstrate an individualized risk of persecution as to Ani, who lacks such notoriety.

\* \* \*

For the foregoing reasons, the petition for review is

**DENIED.**

---

[1] Ani did not raise his CAT claim before either the BIA or this court. The claim is thus unexhausted and forfeited. 8 U.S.C. § 1252(d)(1); *Umana-Escobar v. Garland*, 69 F.4th 544, 550 (9th Cir. 2023).